# Appeal Documents

1:00-cv-00282-MLR-LEK H., et al v. Lemahieu, et al **CASE CLOSED on 05/26/2005**

**U.S. District Court**

**District of Hawaii - CM/ECF V3.1.2 (12/07)**

### Notice of Electronic Filing

The following transaction was entered on 2/11/2008 at 4:14 PM HST and filed on 2/11/2008
**Case Name:**      H., et al v. Lemahieu, et al
**Case Number:**    1:00-cv-282
**Filer:**
**Document Number:** 297

**Docket Text:**
**USCA JUDGMENT as to Notice of Appeal 05-16236. Judgment is hereby REVERSED, REMANDED. (Attachments: # (1) OPINION, # (2) Service List)(ecs, )(CC:ls)**

**1:00-cv-282 Notice has been electronically mailed to:**

Stanley E. Levin  slevin@davislevin.com, debbie@davislevin.com

Michael K. Livingston  mlivingston@davislevin.com, bette@davislevin.com

George S.S. Hom  george.s.hom@hawaii.gov

Holly T. Shikada  holly.t.shikada@hawaii.gov, Cheryl.H.Oeda@hawaii.gov

Daniel K. Obuhanych  dobuhanych@wik.com

Carter K. Siu  csiu@klhllp.com

**1:00-cv-282 Notice will not be electronically mailed to:**

Keith Hunter
Pauahi Tower
1001 Bishop St Ste 1155
Honolulu, HI 96813

John T. Komeiji
Watanabe Ing Kawashima & Komeiji
First Hawaiian Center

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK H., individually and as Guardians Ad Litem of Michelle H. and Natalie H., minors,<br><br>    Plaintiff - Appellant,<br><br>v.<br><br>RIE H., individually and as Guardians Ad Litem of Michelle H. and Natalie H., minors,<br><br>    Plaintiff - Appellant,<br><br>PAUL LEMAHIEU, in his official capacity as superintendent of the Hawaii Public Schools; et al.,<br><br>    Defendants - Appellees. | No. 05-16236<br>D.C. No. CV-00-00282-MLR<br><br>**JUDGMENT**<br><br>FILED IN THE<br>UNITED STATES DISTRICT COURT<br>DISTRICT OF HAWAII<br><br>FEB 11 2008<br>at 11 o'clock and 00 min. ᴬ M.<br>SUE BEITIA, CLERK |

    Appeal from the United States District Court for the District of Hawaii (Honolulu).

    This cause came on to be heard on the Transcript of the Record from the United States District Court for the District of Hawaii (Honolulu) and was duly submitted.

    On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **REVERSED, REMANDED.**

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK H., individually and as Guardian Ad Litem of Michelle H. and Natalie H., minors,<br>    *Plaintiff-Appellant*,<br><br>RIE H., individually and as Guardian Ad Litem of Michelle H. and Natalie H., minors,<br>    *Plaintiff-Appellant*,<br><br>v.<br><br>PAUL LEMAHIEU, in his official capacity as superintendent of the Hawaii Public Schools; ELSIE TANAKA, in her official capacity as Principal of Kipapa Elementary School; JUDITH SARAN-CHOCK, in her official capacity as Principal of Ala Wai Elementary School; PETER CHUN, in his official capacity as Principal of Hokulani Elementary School; HAROLDEEN WAKIDA, in her official capacity as Principal of Ali'iolani Elementary School; DEPARTMENT OF EDUCATION, State of Hawaii; KEITH HUNTER, SR., special master,<br>    *Defendants-Appellees.* | No. 05-16236<br>D.C. No.<br>CV-00-00282-MLR<br>OPINION |

Appeal from the United States District Court
for the District of Hawaii
Manuel L. Real, District Judge, Presiding

591

[1] FAPE under the IDEA and FAPE under the § 504 regulations contain significant differences. Unlike FAPE under the IDEA, "FAPE" under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the "design" of a child's educational program. [2] The § 504 regulations distinctly state that adopting a valid IDEA individualized educational program is sufficient but not necessary to satisfy the § 504 FAPE requirements. Plaintiffs who allege a violation of the FAPE requirement contained in the § 504 regulations, consequently, may not obtain damages simply by proving that the IDEA FAPE requirements were not met. [3] To the extent that the district court ruled, in deciding the first summary judgment motion, that the administrative hearing officer's IDEA decision precluded further litigation as to whether a FAPE was denied under the § 504 regulations, that decision was incorrect.

[4] Congress has clearly expressed its intent that remedies be available under Title V of the Rehabilitation Act for acts that also violate the IDEA. [5] The plain text of 20 U.S.C. § 1415(l) preserves all rights and remedies under the Rehabilitation Act, not just attorney fees. Given the absence of any ambiguity in the statute's text, there was no need to examine its legislative history. [6] Availability of relief under the IDEA does not limit the availability of a damages remedy under § 504 for failure to provide the FAPE independently required by § 504 and its implementing regulations.

[7] Section 504 contains an implied private right of action for damages to enforce its provisions. Whether the parents could bring an action to enforce the § 504 regulations depended on whether those regulations came within the § 504 implied right of action. [8] Whether the § 504 regulations were privately enforceable turned on whether their requirements fell within the scope of the prohibition contained in § 504 itself.

school officials in their official capacities (collectively, "the Agency") for damages for alleged violations of the Individuals with Disabilities Education Act (IDEA), Pub. L. No. 91-230, 84 Stat. 175 (Apr. 13, 1970), and of § 504 of the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 794. Among other rulings, the district court held that "there are no rights, procedures, or remedies available under § 504 for violations of the IDEA's affirmative obligations," and that the United States Department of Education's ("U.S. DOE's") § 504 regulations are not enforceable through a private right of action. It is the relationship between the IDEA and the U.S. DOE's regulations implementing § 504 of the Rehabilitation Act that is at the heart of this case.

As it turns out, that relationship is not straightforward. The IDEA requires, among other things, that states accepting funds under the Act provide disabled children with a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1412(a)(1). Section 504 of the Rehabilitation Act requires that disabled individuals not "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" that receives federal funds. 29 U.S.C. § 794. The U.S. DOE regulations implementing § 504 include a requirement that disabled children in schools receiving federal funds be provided a "free appropriate public education." 34 C.F.R. § 104.33. The parties and the district court have assumed throughout this litigation that a violation of the IDEA statutory FAPE requirement necessarily constitutes a violation of the § 504 regulations' FAPE requirement, an understandable assumption given the use of identical language. As we develop below, however, this assumption is wrong. The FAPE requirements in the IDEA and in the § 504 regulations are, in fact, overlapping but different.

This fundamental misunderstanding has complicated our resolution of the issues in this case. Additionally, Congress has clearly stated its intent to preserve all remedies under § 504 for acts that also violate the IDEA. For these two rea-

MARK H. v. LEMAHIEU   597

Department of Health ("Hawaii DOH")] provides some free services to these students, but only when it has the resources." The U.S. DOE warned the Hawaii DOE that it must provide or purchase appropriate mental health services for special education students.

In January of 1993, a report by the Auditor for the State of Hawaii entitled *A Study on the Memorandum of Agreement for Coordinating Mental Health Services to Children*, No. 93-1, acknowledged that efforts to coordinate among state agencies the provision of mental health services for special education students had largely failed. The report concluded that "the [Hawaii DOE] must provide or purchase mental health services for special education students when the [Hawaii DOH] cannot provide these services."

Later in 1993 a class of plaintiffs comprised of disabled children and adolescents eligible for special education and mental health services sued the Hawaii DOE and the Hawaii DOH in federal court, claiming a failure to comply with the IDEA and with § 504 of the Rehabilitation Act. *Felix v. Waihee*, CV. No. 93-00367-DAE. The district court granted summary judgment for the class on the issue of liability, finding that the agencies "ha[d] systematically failed to provide required and necessary educational and mental health services to qualified handicapped children," in violation of both federal laws. Thereafter, in 1994, the parties entered into a consent decree (the "*Felix* Decree"), which was approved by the district court.

In the *Felix* Decree, the two state agencies acknowledged that they had violated the federal IDEA and § 504 of the Rehabilitation Act. The agencies agreed that the Hawaii DOE would provide all educational services the Felix class members require; that the Hawaii DOH would provide all mental health services the class members require to benefit from the educational services; and that the two agencies would create and maintain a system of care adequate to provide a contin-

the IDEA because of "chronic emotional impairment," not because she suffered from an autism disorder. The Hawaii DOE developed an Individualized Educational Program ("IEP") for Michelle, including placement in a fully self-contained special education classroom on a regular school campus for an extended school year with special education and speech therapy services. Michelle's IEP was updated at regular intervals through 1998, but the recommendations remained substantially unchanged. No representative from DOH attended any of the IEP sessions to discuss mental health services.

In April 1997, the Hawaii DOE changed Michelle's eligibility category from "Emotional Impairment" to "Autism." The Hawaii DOE reassessed her IEP in January 1998, after the diagnosis changed. The recommendations in the new IEP remained nearly identical to those made before the change in diagnosis and included no additional individualized services related to autism.

C.  **Natalie H.**

Natalie H. was born on August 3, 1992. In 1994, the preschool that Natalie was attending, concerned that she might have a "pervasive development disorder," referred her to the Hawaii DOH. The Hawaii DOH performed a psychological evaluation in September 1994 and determined that, at the age of two, Natalie was developmentally at the age of a one-year old overall, but that "[she] showed no symptoms of Pervasive Developmental Disorder." In early 1995, Natalie's family doctor observed developmental delays and referred her to Kaiser Permanente for a neurological evaluation. The Kaiser evaluation diagnosed Natalie with autism and recommended that she be provided with appropriate special education.

In the spring of 1995, when Natalie was nearly three, the Hawaii DOE academically evaluated her and deemed her eligible for special education services, classifying her disability

Mark H. v. Lemahieu 601

determined, based on these findings, that Natalie and Michelle had been denied a FAPE under the IDEA, that their IEPs were inadequate, and that numerous procedural violations had occurred.

The administrative officer instructed the Hawaii DOE to take a number of steps to remedy the violations. There is no contention that the Hawaii DOE has not complied with the administrative order, which was not appealed, or that Natalie and Michelle are currently being denied a FAPE as defined by the IDEA.

## II. STATUTORY CONTEXT

Before recounting the procedural history of this case, we examine the two related but separate statutes central to this litigation, the IDEA and § 504 of the Rehabilitation Act.

The statute presently known as the IDEA originated in 1970 as part of the Education of the Handicapped Act. Pub. L. No. 91-230, 84 Stat. 175 (Apr. 13, 1970). It was later amended substantially in the Education for all Handicapped Children Act of 1975, Pub. L. No. 94-142, 89 Stat. 773 (Nov. 29, 1975), and was amended again and renamed the "Individuals with Disabilities Education Act" in 1990. Pub. L. No. 101-476, 104 Stat. 1103 (Oct. 30, 1990). For simplicity, we refer to all versions of the statute as IDEA, even though that title did not appear until 1990.

At the time the 1975 amendments were enacted, "the majority of disabled children in America were 'either totally excluded from schools or sitting idly in regular classrooms awaiting the time when they were old enough to [drop out].' " *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005) (quoting H.R. Rep. No. 94-332, p. 2 (1975)). Among Congress's purposes in enacting the IDEA was "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and

Mark H. v. Lemahieu    603

creates a cause of action under which a court may grant individuals "such relief as [it] determines is appropriate" for violations of the IDEA. 20 U.S.C. § 1415(i)(2)(C)(iii). Although injunctive relief is available under the IDEA, "ordinarily monetary damages are not." *Witte v. Clark County School Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999); *see also Taylor by and through Taylor v. Honig*, 910 F.2d 627, 628 (9th Cir. 1990).

While the IDEA focuses on the provision of appropriate public education to disabled children, the Rehabilitation Act of 1973 more broadly addresses the provision of state services to disabled individuals. Section 504 of the Rehabilitation Act, the Act's core provision, states that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Section 504 applies to all public schools that receive federal financial assistance. *See* 29 U.S.C. § 794(b)(2)(B) (defining "program or activity" to include the operations of "local educational agenc[ies]").

Agencies may promulgate regulations that implement the requirements concerning treatment of disabled individuals

---

(aa) meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and

(bb) meet each of the child's other educational needs that result from the child's disability; . . .

cross-referenced regulations, 34 C.F.R. §§ 104.35 and 104.36, require evaluation and testing of all those who need or are believed to need special education, as well as the development of procedural safeguards to ensure that guardians of disabled children receive notice, access to relevant records, and an opportunity for an "impartial hearing."

Section 504 establishes an implied private right of action allowing victims of prohibited discrimination, exclusion, or denial of benefits to seek "the full panoply of remedies, including equitable relief and [compensatory] damages." *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 (9th Cir. 1987); *see also Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Punitive damages are not available under § 504. *Barnes*, 536 U.S. at 189.

In sum, the IDEA contains a statutory FAPE provision and allows private causes of action only for prospective relief. Section 504 contains a broadly-worded prohibition on discrimination against, exclusion of and denial of benefits for disabled individuals, under which the U.S. DOE has promulgated regulations containing a FAPE requirement worded somewhat differently from the IDEA FAPE requirement. Section 504 can be privately enforced to provide, in addition to prospective relief, compensatory but not punitive damages for past violations.

### III. FEDERAL COURT PROCEEDINGS

The litigation history of this case is somewhat tortuous. We recount these proceedings in some detail, as they demonstrate the significance of the assumptions about the relationship between § 504 and the IDEA that have persisted throughout this litigation.

In 2000, the girls and their parents filed a federal lawsuit against the Hawaii DOE and various school officials in their official capacities for violations of the IDEA and of § 504 of

| Mark H. v. LeMahieu | 607 |
|---|---:|

cause of action for prospective relief is the only remedy available to the H. family. The court held that the Eleventh Amendment did not bar the § 504 claims, but did bar any claims against the state under § 1983 for money damages.

### B. July 24, 2001 Summary Judgment Ruling.

The Agency then moved for summary judgment, advancing several new arguments and reiterating their earlier Eleventh Amendment arguments. The H. family filed a cross-motion for partial summary judgment, arguing (1) that the administrative hearing decision on the IDEA was res judicata with regard to the question whether the girls were denied a FAPE; and (2) that the appropriate substantive standard in an action for damages under § 504 is whether a defendant demonstrated "deliberate indifference" to the disabled individual's accommodation needs, not whether a defendant acted with discriminatory animus.

The district court granted the H. family's cross-motion in its entirety, and granted in part and denied in part the Agency's motion. In granting the motion, the court held that "[d]efendants are precluded from arguing that Michelle and Natalie were not denied FAPE." The court rejected most of the Agency's arguments on summary judgment but agreed with the Agency that non-equitable monetary damages are not available under the IDEA and that the appropriate defendant for monetary relief is the state, not state officials in their official capacities. As a result of these rulings, the only remaining claim as of 2001 was the § 504 cause of action against the state itself for monetary relief.

### C. May 25, 2005 Summary Judgment Ruling.

On March 12, 2004, the case was reassigned to Judge Manuel Real of the Central District of California, on temporary assignment to the District of Hawaii. The Agency again moved for summary judgment, reasserting some arguments

MARK H. v. LEMAHIEU      609

§ 504 for government actions that violate both statutes. This conclusion was erroneous for two reasons.[8]

---

[8] The H. family argues that Judge Real abused his discretion when he reconsidered Judge Ezra's earlier rulings on whether the IDEA is the exclusive remedy for denial of a FAPE and on whether plantiffs' § 504 claim is barred by sovereign immunity. *See Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (holding that the district court's application of the law of the case doctrine is reviewed for an abuse of discretion). Our case law leaves some doubt concerning whether the law of the case doctrine constrains a district court's discretion to reconsider its own rulings prior to final judgment. *See City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (holding that the law of the case doctrine is "wholly inapposite" when a district court reconsiders an order over which it retains jurisdiction); *but see United States v. Alexander*, 106 F.3d 874, 876-77 (9th Cir. 1997) (holding that the district court was barred from reconsidering, after a mistrial and a change of judges, its own previous ruling on a motion to suppress in the absence of changed law or circumstances); *United States v. Smith*, 389 F.3d 944, 949-50 (9th Cir. 2004) (relying on *Santa Monica Baykeeper* for the holding that "the law of the case doctrine is wholly inapposite" when a district court reconsiders an order over which it retains jurisdiction and distinguishing *Alexander* on the ground that in that case the district court did not reconsider in a "timely" fashion (internal quotation marks omitted)).

We need not resolve here whether the law of the case doctrine ever applies in district court to previous rulings of that district court. Judge Ezra understood the Agency's arguments about the exclusivity of the IDEA remedy as raising only a question of administrative exhaustion, and so never decided whether the IDEA is the exclusive remedy for acts that violate its terms. As a result, there was no ruling by Judge Ezra on the exclusivity of the IDEA, and no "law of the case" on this issue prior to Judge Real's ruling. Further, to the extent that Judge Real decided whether sovereign immunity barred the H. family's actions under § 504, he held only that it barred actions under § 504 to enforce the *IDEA* FAPE provisions. Because, for reasons we develop at length below, the *§ 504 FAPE* regulations and the IDEA FAPE requirement are distinct, this ruling did not determine whether actions under § 504 to enforce the § 504 regulations are barred by sovereign immunity. As the H. family may pursue damages only for a violation of the § 504 FAPE requirements, Judge Real's sovereign immunity ruling is simply not relevant. Moreover, the Agency does not rely on or defend Judge Real's sovereign immunity ruling on appeal, stating in its brief that "[i]n the present case, the State is not questioning the fact that it has waived its Eleventh Amendment immunity in return for receiving federal financial assistance under the IDEA and the Rehabilitation Act."

regulations' definition of FAPE (emphasis added)); *id.* at § 104.36 ("Compliance with the procedural safeguards of section 615 of the [IDEA] is *one means* of meeting" the § 504 procedural requirements in § 104.36) (emphasis added). Plaintiffs who allege a violation of the FAPE requirement contained in U.S. DOE's § 504 regulations, consequently, may not obtain damages simply by proving that the IDEA FAPE requirements were not met.

[3] The district court thus erred when it held that the H. family's § 504 claim attempts "to correct what is in essence a mere violation of a [FAPE] under the IDEA," and that the IDEA is therefore the H. family's exclusive remedy. At the same time, this examination of the text of the § 504 regulations and the IDEA demonstrates that the H. family cannot rely on the administrative hearing officer's decision with regard to an IDEA FAPE as dispositive of whether a FAPE was denied under § 504. So, to the extent that the district court held, in deciding the first summary judgment motion, that the administrative hearing officer's IDEA decision precluded further litigation as to whether a FAPE was denied under the § 504 regulations, that decision is also incorrect.[9]

[4] *Second,* and as important, Congress has clearly expressed its intent that remedies be available under Title V of the Rehabilitation Act for acts that also violate the IDEA, overriding the holding of the Supreme Court in *Smith v. Robinson,* 468 U.S. 992 (1984). In *Smith,* the Court considered the relationship between the remedies available under § 504 and those available under the IDEA. Petitioners in *Smith*

---

[9] At oral argument, the H. family stated that they were not relying on that res judicata ruling as dispositive of the specific question whether a FAPE was provided under § 504. We note that our conclusion that the administrative hearing decision is not dispositive of whether Michelle and Natalie were provided a FAPE under § 504 does not affect the district court's holding to the extent that it determined that the administrative hearing decision precludes litigation on the question whether an *IDEA* FAPE was provided.

MARK H. v. LEMAHIEU                            613

*v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000). The plain text of the statute preserves *all* rights and remedies under the Rehabilitation Act, not just attorneys' fees. Given the absence of any ambiguity in the statute's text, there is no need to examine its legislative history.

In any event, the statute's legislative history is not to the contrary. The district court observed that neither the Senate nor House reports discussed the possibility of monetary damages under § 1415(*l*). *See* S. REP. No. 99-112 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 1798. Nowhere in the legislative history of the statute, however, does Congress state that it was intended to provide only for attorneys' fees, or that it was not intended to allow monetary damages under § 504. *Cf. United States v. Turkette*, 452 U.S. 576, 591 (1981) (observing that, although "the legislative history [of RICO] forcefully supports the view that the major purpose of [the statute] is to address the infiltration of legitimate businesses," that does not require "the negative inference that [the statute] [does] not reach the activities of enterprises organized and existing for criminal purposes" where the plain text of the statute clearly includes all "enterprises").[10]

[6] In sum, availability of relief under the IDEA does not limit the availability of a damages remedy under § 504 for failure to provide the FAPE independently required by § 504 and its implementing regulations.[11]

---

[10] We have recently held that, despite passage of § 1415(*l*), the provisions of the IDEA are not enforceable under § 1983. *Blanchard v. Morton Sch. Dist.*, ___ F.3d ___, 2007 WL 4225789 at *3 (9th Cir. 2007). The conclusion that § 1983 actions cannot be used to enforce the IDEA does not affect our analysis in this case. Section 1415(*l*) explicitly mentions the remedies available under the Rehabilitation Act and indicates that they are preserved, but does not refer to § 1983.

[11] Because the § 504 FAPE requirement differs from the IDEA FAPE requirement, it is not clear how the exhaustion provision of § 1415(*l*) applies to suits for damages for failure to provide a § 504 FAPE. We need not reach this issue, because the H. family did exhaust the IDEA administrative remedies.

statute; regulations that go beyond a construction of the statute's prohibitions do not fall within the implied private right of action, even if valid.[12] *Id.* at 284. As applied here, *Sandoval* instructs that whether the § 504 regulations are privately enforceable will turn on whether their requirements fall within the scope of the prohibition contained in § 504 itself.

The district court held that § 504 "merely prohibits intentional discrimination," while the § 504 FAPE regulations purport to create "affirmative obligations." Applying *Sandoval*, the district court concluded that because the § 504 FAPE regulations uniformly impose "affirmative obligations" that are not imposed by the statute itself, they are not enforceable at all through the implied private right of action.

The district court's approach to this question fails to recognize three key features of § 504 and the § 504 FAPE regulations:

*First*, insofar as the district court was drawing a direct analogy to *Sandoval*'s prohibition on private causes of action under a disparate impact regulation, that analogy is not entirely persuasive. The § 504 regulations in question — unlike the regulations under § 602 that the Supreme Court characterized in *Sandoval* as "disparate impact" regulations — are not fairly viewed as imposing liability based only on unintentionally created "effects" or outcomes.

The Title VI regulations at issue in *Sandoval* provided that funding recipients may not "utilize criteria or methods of administration which *have the effect* of subjecting individuals to discrimination because of their race, color, or national origin." 28 C.F.R. § 42.104(b)(2) (emphasis added). In contrast, the § 504 FAPE regulations encompass several provisions, the

---

[12] The Court in *Sandoval* made clear that it was not declaring the Title VI disparate impact regulations substantively invalid. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001).

child. So, contrary to the district court's apparent concern that the § 504 regulations create free-floating "affirmative obligations," in fact the obligation created is a comparative one. In other words, school districts need only design education programs for disabled persons that are intended to meet their educational needs to the same degree that the needs of nondisabled students are met, not more.

Further, the regulations also prohibit separating handicapped students from nonhandicapped students unless "it is demonstrated . . . that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily," and require that disabled children be provided "comparable facilities" to those used by non-disabled children. 34 C.F.R. § 104.34(a)-(c). Even if some of the other regulations might be characterized as imposing "affirmative obligations" rather than prohibiting discrimination, regulations aimed at preventing baseless segregation of disabled and nondisabled students clearly represent a prohibition on simple discrimination as long understood. *Cf. Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954).

*Third*, regardless of whether or not the § 504 FAPE regulations can be characterized as to some degree prohibiting "disparate impacts" or imposing "affirmative obligations," the district court gave the prohibition contained in § 504 itself too cramped a reading. The text of § 504 prohibits not only "discrimination" against the disabled, but also "exclu[sion] from . . . participation in" and "deni[al] [of] the benefits of" state programs solely by reason of a disability. 29 U.S.C. § 794(a). This language is nearly identical to the language in Title VI, and, in general, the remedies available under both § 504 and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132,[13] are "linked" to Title VI. *Ferguson v.*

---

[13]"[T]here is no significant difference in the analysis of rights and obligations created by" the Rehabilitation Act and the ADA. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002).

MARK H. v. LEMAHIEU      619

(9th Cir. 2002) ("The State's appropriate treatment of some disabled persons does not permit it to discriminate against other disabled people under any definition of 'meaningful access.' ").[14]

The district court and the Agency appear to have forgotten the established § 504 "reasonable accommodation" and "meaningful access" requirements in evaluating whether the § 504 FAPE regulations come within § 504's substantive scope. The reason for this elision may have been a misunderstanding about the distinction between interpreting the scope of the prohibition contained in § 504 and determining the state of mind with which a violation of § 504 must be committed so as to give rise to a damages remedy.

Our cases on the appropriate *mens rea* standard for a § 504 damages remedy recognize — as they must after *Crowder* — that § 504 itself prohibits actions that deny disabled individuals "meaningful access" or "reasonable accommodation" for their disabilities. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001); *Ferguson*, 157 F.3d at 679. *Cf. Lovell*, 303 F.3d at 1054 (assuming that "meaningful access" is the appropriate standard). Those cases then go on to analyze the state of mind with regard to a denial of "meaningful access" or "reasonable accommodation" necessary to justify

---

[14] Without deciding whether any cause of action the H. family may allege in the future based on the § 504 FAPE regulations meets the standard of *Sandoval*, we observe that a number of the § 504 FAPE regulations are arguably intended to ensure "meaningful access" to public education. In particular, a disabled individual may be denied "meaningful access" to public education when that education is not designed to meet her needs as adequately as the needs of other students are met. *See* 34 C.F.R. § 104.33. The FAPE regulations also require adherence to certain procedures intended to facilitate provision of a FAPE, including testing and evaluation, 34 C.F.R. § 104.35, and notice to parents of educational plans for their children. 34 C.F.R. § 104.36. Depending on the particular circumstances, testing and evaluation of a disabled child may be necessary to ensure "meaningful access" to an appropriate education, as might notice to a child's parents of the educational plan for that child.

§ 504 FAPE regulations that the H. family invokes can be interpreted as a variety of meaningful access regulation, they will fall within the § 504 implied cause of action. Finally, to obtain damages, the H. family will ultimately have to demonstrate that the Agency was deliberately indifferent to the violation of whatever requirements the family validly seeks to enforce.

**B.**

We also note that resolution of the question whether the regulations can be enforced through the right of action in § 504 will likely be dispositive of the Eleventh Amendment sovereign immunity concerns that have frequently popped up in this case. The state argues that, while states do not enjoy sovereign immunity from suits to enforce § 504 itself, *see Lovell v. Chandler*, 303 F.3d at 1051, the U.S. DOE's § 504 regulations cannot be enforced against states because they demand more of the states than they bargained for when they agreed to waive their Eleventh Amendment sovereign immunity.

[10] However, as our discussion of *Sandoval* demonstrates, to be enforceable through the § 504 implied private right of action, regulations must be tightly enough linked to § 504 that they "authoritatively construe" that statutory section, rather than impose new obligations. *Sandoval*, 532 U.S. at 284. Regulations that do not impose obligations beyond § 504's prohibition on disability-based disadvantage but instead implement that prohibition are part of the bargain struck between states and the federal government. *See Lovell*, 303 F.3d at 1051; *Douglas v. Cal. Dept. of Youth Auth.*, 271 F.3d 812, 820-21 (9th Cir. 2001); *cf. Vinson v. Thomas*, 288 F.3d at 1151, 1154 (holding that state was not immune from a suit under § 504 in a case in which plaintiff relied in part on Department of Justice regulations promulgated under the ADA). Accordingly, those regulations that can be enforced through the

support a damages action under § 504, nor do we reach the family's motion for summary judgment. We do note that, as with the district court's ruling on sovereign immunity, the court held only that there was insufficient evidence of intentional discrimination as to the IDEA's FAPE requirements, not the § 504 FAPE regulations. The district court's decision therefore does not determine whether the H. family has demonstrated a triable issue as to violation of the § 504 regulations.