OF COUNSEL:
DAVIS LEVIN LIVINGSTON
STANLEY E. LEVIN            1152-0
MICHAEL K. LIVINGSTON       4161-0
ANNE L. WILLIAMS            1662-0
SUSAN K. DORSEY             7431-0
851 Fort Street Mall, Suite 400
Honolulu, Hawaii  96813
Telephone:  (808) 524-7500/Fax:  (808) 545-7802
E-Mail: slevin@davislevin.com

KEITH H.S. PECK             6825-0
PECK & ASSOCIATES
3360 Kamaaina Place
Honolulu, Hawaii 96817
Telephone: (808) 537-4003/Fax: (808) 537-3110

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK H. and RIE H., Individually and as Guardians Ad Litem of MICHELLE H. and NATALIE H., minors,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br><br>PATRICIA HAMAMOTO, in her official capacity as Superintendent of the Hawaii Department of Education; DEPARTMENT OF EDUCATION, STATE OF HAWAII,<br><br>　　　　　　　Defendants. | CIVIL NO. CV 00-00282 MLR/LEK (Other Civil Action)<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY OF BARBARA BATEMAN; DECLARATION OF STANLEY E. LEVIN; EXHIBITS "A" & "B" AND CERTIFICATE OF SERVICE**<br><br>HEARING:  September 11, 2008<br>TIME:      10:00 a.m.<br>JUDGE:     Manuel L. Real |

TRIAL: March 16, 2009
JUDGE MANUEL L. REAL

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO PRECLUDE THE TESTIMONY OF BARBARA BATEMAN**

**I.  INTRODUCTION**

Dr. Barbara Bateman is a nationally recognized expert in special education – the education of children with learning disabilities.  Her expertise is at both the individual level (what are the needs of the learning disabled child and what reasonable accommodations can or must be offered to afford the child meaningful access to education) and at the systemic level (policies and practices related to special education) as a review of her curriculum vitae readily discloses.  She has written, researched and taught on the design and implementation of educational programs for disabled children as a professor at the University of Oregon, and has authored numerous books and chapters on the subject.  Her experience spans fifty years in the field of special education, and includes work as a consultant in every state in the union, including Hawaii.  See Defendant's Exhibit "B".  She also has extensive experience in evaluating children's progress in academics.

Yet, the Defendants now seeks to strike Dr. Bateman in three cases[1], before this Court has had the opportunity to listen to testimony at trial with regard to her qualifications or opinions, by attempting to cast her as someone who will offer only legal conclusions, claiming she is not up to date on "recent relevant case law" and that she is basing her opinion on inaccurate data. It cherry picks her reports, and ignores huge portions of her depositions, and relies on its own questioning of this witness – rather than the questions Plaintiffs will frame at trial – to suggest that her testimony is nothing more than an intrusion on the province of the court or an attempt to improperly instruct the jury on the law. This is a serious mischaracterization of her proposed testimony. In fact, Dr. Bateman has substantial specialized knowledge in the field of special education that will assist the trier of fact here to understand the evidence and to determine the facts at issue in this case, and Plaintiffs is entitled to present her testimony at trial.

## II.   BACKGROUND

Michelle and Natalie are two sisters with autism who were denied any autism specific services during a critical period of their development, allegedly in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a). At trial, one of the key issues will be whether either Michelle or Natalie were denied "meaningful access" to state-provided services. *Mark H. v. LeMahieu*, 513 F.3d

---

[1] Defendants have filed the same motion and memorandum in three factually distinct cases: Mark H. v. Hamamoto, Civ. 00-282 MLR/LEK, Patricia N. v. Hamamoto, Civ. 00-252 MLR/LEK, and Stephen L. v. Hamamoto, Civ. No. 00-338 MLR/LEK. Plaintiffs are *not* filing the same memorandum in opposition in each of the three cases.

922, 937 (9th Cir. 2008). Dr. Bateman will be offered as an expert witness on this issue. As a nationally regarded expert in special education, including with regard to children with autism, she is competent to testify concerning reasonable accommodations for children like Michelle and Natalie in the primary education context, as well as to the effect that the inability to communicate or socialize had on their ability to access education in any meaningful way. She will also testify with regard to whether her review of the girls' educational history indicated that reasonable accommodations had or had not been provided, and what effect that had on their ability to meaningful access public education even to date.

### III. ANALYSIS

#### A. Rules of Evidence Related to Expert Witnesses

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule does not preclude experts from testifying on the ultimate issues in the case. To the contrary, Rule 704 of the Federal Rules of Evidence provides in pertinent part:

> **(a)** Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Thus, the fundamental premise of the Defendant's motion is wrong. Dr. Bateman may state her final opinions, embracing the ultimate issues for the jury, so long as the opinion is not otherwise objectionable.

**B.     Use of Expert Witnesses on Reasonable Accommodation Issues is routine in "reasonable accommodation" cases.**

The *Mark H.* court explicitly instructed the "a public entity can be liable for damages under Section 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). It also clearly stated that a showing of discriminatory animus is not required: "we have held that plaintiffs must prove a mens rea of "intentional discrimination," to prevail on a Section 504 claim, but that that standard may be met by showing "deliberate indifference," and not only by showing "discriminatory animus." *See Mark H.,* 513 F.3d at 938; *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *id.* at 1130 (deliberate indifference is "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.*

Thus "meaningful access or reasonable accommodation" of Michelle and Natalie to a free appropriate public education is thus a key issue in this case. The

question of "reasonable accommodation" often involves expert testimony. *See, e.g., Duvall v. County of Kitsap*, 260 F.3d 1124, 1137 (9th cir. 2001)("We have observed that "mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary...." *Wong v. Regents of the University of California,* 192 F.3d 807, 818 (9th Cir.1999)). Cf. *Stern v. University of Osteopathic Medicine and Health Sciences,* 220 F.3d 906, 909 (8th Cir. 2000)(" We conclude that expert opinion is necessary here because neither the average layperson nor this court can determine without expert assistance the nature of dyslexia and what measures would actually address Mr. Stern's needs").

Expert testimony is thus highly relevant to what accommodations could and should reasonably have been made available for Michelle and Natalie in light of their disabilities. Based on her extensive special education experience, including extensive experience with children with autism, Dr. Bateman's testimony in her deposition and at trial directly addresses what reasonable accommodations these young girls needed in light of their disabilities, as well as what reasonable accommodations they did not receive and the effects this had on them. All of this testimony is clearly within the scope of the rules of evidence set forth above, and will be helpful to a jury in resolving the ultimate issues in this case.

For instance, Dr. Bateman explains that each of these children need socialization. Ex. A (Deposition of Dr. Bateman) at p. 144, and communication skills. *Id.* She also testifies that professionals in the special education field would have been aware of the importance and availability of autism specific programs for children with autism in the years at issue here. Ex. A at pp. 174, 178-179. She also testifies that no professional educator could think that the programs offered to Michelle and Natalie in the years at issue were autism specific. *Id.* at p. 181. She also testifies as to the degree of training and expertise required for qualified teachers of autism. Tr. at p. 185. A review of her reports shows numerous other similar matters on which she opines. None of these are matters that a lay witness would be qualified to testified about, yet each is directly relevant to the issues to be determined by the jury.

Instead of focusing on the opinions, and bases for opinions, that Dr. Bateman will give, the Defendant emphasizes her knowledge of case law as reflected in a report written some eight years ago, on January 16, 2001, *in another case*. See Def. Mem. at 8. Dr. Bateman explained at her deposition that she did not remember writing, or even recently reviewing that report. *See* Ex. B (Deposition of Dr. Bateman in the Patricia N. case) at pp. 10-11 and 20. She was careful to explain that the report was written in the context of the Individuals with Disabilities Act, not Section 504, and that it should be viewed now through the

7

Section 504 lens. *Id.* at 22. *See Mark H.*, 513 F. 3d at 924 ("The parties and the district court have assumed throughout this litigation that a violation of the IDEA statutory FAPE requirement necessarily constitutes a violation of the § 504 regulations' FAPE requirement, an understandable assumption given the use of identical language. As we develop below, however, this assumption is wrong. The FAPE requirements in the IDEA and in the § 504 regulations are, in fact, overlapping but different."). Thus, to the extent that her report from 2001 dealt with a free appropriate public education under the IDEA (including case law under IDEA), it is no longer relevant and certainly cannot be used as a grounds to strike Dr. Bateman's expert testimony on the issues currently pending for the trier of fact as Defendant attempts to do here..

The Defendant also suggests that Dr. Bateman's testimony is unreliable. Def. Mem. at 17. However,

> "Rule 702 on its face creates no general power in the trial judge to exclude expert testimony on the grounds it is unreliable. This reflects basic policies of the Evidence Rules in several respects. First, it is typical of the Rules' liberal approach toward admiisibility to limit the gatekeeping powers of the trial judge. … Second, the absence of a reliability requirement for admission affirms that the power to evaluate the credibility of witnesses and give testimony its proper weight primarily resides with the trier of fact."

Wright & Gold, Federal Practice and Procedure: Evidence Sec. 6262 at 184-185 (1997). In this case, the fact that Dr. Bateman is testifying as an expert in special

8

education, and has unparalleled experience in the field, is more than sufficient to satisfy this Court's gate keeping duties.

### C. Dr. Bateman is not being offered as an expert in case or statutory law.

A great deal of Defendants' criticism of Dr. Bateman is that she is not a legal expert, and is not up to date on case law. Def. Mem. at 9-16. It bases this criticism of Dr. Bateman on its own questions to her, such as "Are punitive damages still available under Section 504?" which are obviously not questions that would be asked an expert at trial, particularly where there is no claim for punitive damages. If such questions were posed at trial, the Defendants would of course have ample opportunity to object.

## IV. CONCLUSION

The Defendants' motion is without merit and should be denied. Defendants have misleadingly cherry-picked Dr. Bateman's expert reports and testimony to suggest that she will testify on case law or statutes, when in fact she will testify as to Michelle and Natalie's needs, reasonable accommodations that could have been but were not provided to either girl, how this impacted their ability to access public education, and the effect this had on them and their family. She bases her opinions on over fifty years of experience in the field of special education, as a teacher, professor and consultant. Her testimony falls strictly within the bounds of the rules of evidence, and should be allowed.

 DATED:  Honolulu, Hawaii, August 22, 2008.

                /S/ STANLEY E. LEVIN

                _____
                STANLEY E. LEVIN
                MICHAEL K. LIVINGSTON
                ANNE L. WILLIAMS
                SUSAN K. DORSEY
                KEITH H.S. PECK
                Attorneys for Plaintiffs