A20466E
## BARBARA BATEMAN, Ph.D., J.D. VOLUME 1   JUNE 7, 2008

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3

 4   PATRICIA N. and GUY N,           )
     individually, and as Guardian    )
 5   Ad Litem of AMBER N., a minor,   )
                                      )
 6                     Plaintiffs,    )
                                      )
 7             vs.                    ) No. CV00-00252 MLR-LEK
                                      )
 8   PAUL LeMAHIEU, in his official   )
     capacity as Superintentent of    )
 9   the Hawaii Public Schools;       )
     BETH SCHIMMELFENNIG, in her      )
10   official capacity as an          )
     Education Specialist;            )
11   PHYLLIS IDA, in her official     )
     capacity as an employee of the   )
12   Department of Education, State   )
     Of Hawaii; and DEPARTMENT OF     )
13   EDUCATION, State of Hawaii,      )
                                      )
14                     Defendants.    )
     _____)
15

16         DEPOSITION OF BARBARA BATEMAN, Ph.D., J.D.,

17                    MILLBRAE, CALIFORNIA

18                       JUNE 7, 2008

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800) 288-3376
     www.depo.com
23

24   REPORTED BY:  JANE H. STULLER, CSR No. 7223, RPR

25   FILE NO.:  A20466E
```

A20466E
BARBARA BATEMAN, Ph.D., J.D. VOLUME 1   JUNE 7, 2008

### Page 10

1 remember reading this. Oh, a long time ago, like about
2 seven years ago, I did read this document. I have not
3 reread it. Do you want to know about it?
4    Q. Sure. Could you identify what you are looking
5 at, Doctor?
6    A. I'm looking at pages --
7    Q. First of all, that looks like your January
8 16th, 2001 report. And there appears to be a transcript
9 attached to it, correct?
10    A. Well, I don't know -- I -- I'm not at all sure
11 what this is.
12       (Witness examining document.)
13    A. This appears to be a letter written by me with
14 some hearing testimony, which I gave in the Nahale
15 matter, attached -- it's addressed to Stan Levin. And I
16 am addressing certain matters that he asked me to
17 address. They are numbered one through nine, I believe.
18    Q. Okay.
19    A. And I have no recollection of this -- of this
20 document --
21    Q. Okay.
22    A. -- but it is in my file.
23    Q. Okay. Is that something you reviewed to
24 prepare for today?
25    A. No.

### Page 11

1    Q. I'm just asking you what you read --
2    A. Yeah, I'm surprised to see that. I -- I
3 obviously wrote it, but I have recollection.
4    Q. Okay.
5    A. I did review the hearing officer's decision in
6 the matter of Nahale. I reviewed Dr. Houck's report
7 dated 11/15/03. I reviewed portions of the -- of the
8 Amended Complaint. And I reviewed parts of the
9 transcript of the hearing in this matter.
10    Q. That the --
11    A. And I believe the pieces that I have are Dr.
12 Siegel and Mrs. Nahale.
13    Q. Is that the due process hearing?
14    A. Yes.
15    Q. Can I see that file, Doctor?
16    A. Yes.
17    Q. Were these loose papers part of your file, as
18 well?
19    A. Yeah. And this is the one of which I have no
20 recollection.
21    Q. Okay. And Doctor, the items you've just
22 described to me come from a -- a yellow manila file
23 entitled Amber N.?
24    A. Yes.
25    Q. Okay. And there are some other things in this

### Page 12

1 file. There are some handwritten notes?
2    A. Yes.
3    Q. Okay. Two pages of handwritten notes
4 pertaining to Amber Nahale's school?
5    A. To -- pertaining to the school observation, and
6 one-half pertaining to home observation.
7    Q. Okay. And Doctor, I don't know if these were
8 placed mistakenly in this Amber Nahale file, but you
9 appear to have two photocopies of Exhibit 5 and 6 to the
10 Stephen L. case, your deposition in the Steven L. case,
11 photocopies of handwritten notes.
12       Do you recall that from yesterday?
13    A. Yes.
14    Q. Okay. These were not supposed to be part of
15 this file, or are they?
16    A. You just gave these to me this morning. And
17 this is the only file I had with me, so I put these two
18 pieces of paper in this file so I wouldn't lose track of
19 them.
20    Q. Okay.
21    A. This morning I did that.
22    Q. All right. When you came here?
23    A. Correct.
24    Q. Okay. Thank you.
25       MR. USHIRODA: Off the record.

### Page 13

1       (Discussion off the record.)
2       MR. USHIRODA: Back on, Jane.
3    Q. Doctor, we've just gone over your yellow manila
4 file entitled Amber Nahale, which contains documents
5 pertaining to the Nahale case. You have that -- this
6 yellow file. And it's my understanding that you also
7 have some documents that may be sitting -- that are
8 sitting on your kitchen table?
9    A. Are sitting on my kitchen table.
10    Q. In Crestview, Oregon?
11    A. Correct.
12    Q. And do you know about how many documents, you
13 know, like a stack?
14    A. Yeah. The Nahale stack is shorter than the
15 others. I would guess it to be on the order of an inch.
16 And I would suppose that there are maybe six IEPs,
17 about, and a very small stack of BOE forms that I don't
18 even know what they are.
19    Q. Okay. When you reviewed those -- those
20 documents that are on -- in Oregon, as we speak right
21 now, did you make any notations or markings on those
22 documents? Like sometimes when people review
23 transcripts, they make notes in this margin or things
24 like that?
25    A. No, I -- I didn't actually review them. I

4 (Pages 10 to 13)

ATKINSON-BAKER, INC. COURT REPORTERS         1 (800) 288-3376

A20466E
BARBARA BATEMAN, Ph.D., J.D. VOLUME 1   JUNE 7, 2008

## Page 18

1  Q. On this last trip in May, did you get a chance
2  to meet Amber?
3  A. Oh, yes.
4  Q. Was that the first time you met Amber?
5  A. I believe so.
6  Q. When you testified at the due process hearing,
7  I believe that was in 2001, did you -- you didn't meet
8  with the Nahales then?
9  A. Not that I recall. I --
10  Q. Okay. Now, what is your best recollection of
11  when Mr. Ellis first contacted you about the Nahale
12  case?
13  A. I have no recollection. But from this letter,
14  I would assume it was in late 2000 or perhaps earlier.
15  I --
16  Q. Let me get some housekeeping out of the way,
17  and then we'll proceed.
18      (Whereupon, Defendants' Exhibit 3
19      was marked for identification.)
20  BY MR. USHIRODA:
21  Q. Doctor, I'm handing you what I've marked as
22  Exhibit 3 to your deposition.
23      Would you please identify that for the record.
24      (Witness examining document.)
25  A. This is a report that I prepared 5/25/08 and

## Page 19

1  sent to Mr. Levin on -- report on Amber Nahale.
2      (Whereupon, Defendants' Exhibit 4
3      was marked for identification.)
4  BY MR. USHIRODA:
5  Q. Doctor, I'm also handing what you what I've had
6  marked as Exhibit 4 for the record -- for your
7  deposition.
8      Would you please identify that for the record.
9      (Witness examining document.)
10  A. This is a report submitted -- or written by me
11  July 9th, '03, and submitted to Mr. Levin on Amber
12  Nahale.
13      (Whereupon, Defendants' Exhibit 5
14      was marked for identification.)
15  Q. And Doctor, I'm also handling you what I've
16  marked as Exhibit 5 to your deposition.
17      Could you please identify that for the record.
18      (Witness examining document.)
19  A. Yes. This is a letter written by me January
20  16th, '01, to Mr. Ellis, answering questions of his and
21  attaching excerpts from the -- from my testimony at
22  hearing.
23  Q. Do you know what date that testimony was given
24  on?
25  A. October 18th, 1999.

## Page 20

1  Q. So --
2  A. So this -- from this, I can conclude that, in
3  fact, he had contacted me prior to the letter that I
4  wrote.
5  Q. Okay.
6  A. This is the document of which I have no
7  recollection.
8  Q. Okay. And you're referring to Exhibit 5?
9  A. Five, yes.
10      MR. USHIRODA: You already have those, Stan. I
11  gave you copies of those.
12      We are off the record.
13      (Discussion off the record.)
14      MR. USHIRODA: Okay. Back on.
15      (Whereupon, Defendants' Exhibit 6
16      was marked for identification.)
17  BY MR. USHIRODA:
18  Q. You know, Doctor, I'm handing you what I've
19  marked as Exhibit 6 to your deposition. It is your
20  handwritten calculations about the approximate time you
21  spent on this case this year; is that correct?
22  A. Yes.
23      MR. USHIRODA: Off the record.)
24      (Discussion off the record.)
25      (Whereupon, Defendants' Exhibit 7

## Page 21

1      was marked for identification.)
2  BY MR. USHIRODA:
3  Q. Dr. Bateman, I'm handing you what I've marked
4  as Exhibit 7 to your deposition. It is two pages of
5  handwritten notes.
6      Could you please identify that for the record.
7  A. These are notes that I took on May 20th, '08, a
8  school observation of Amber.
9  Q. Thank you.
10      (Whereupon, Defendants' Exhibit 8
11      was marked for identification.)
12  BY MR. USHIRODA:
13  Q. And I'm also handing you what I've marked as
14  Exhibit 8 to your deposition.
15      Could you please identify that for the record.
16      (Witness examining document.)
17  A. I am uncertain as to the date. It says May 19,
18  but that doesn't seem right to me. These are notes that
19  I took during a visit to Amber's home.
20  Q. Would it be fair to say that that visit to
21  Amber's home occurred this year?
22  A. Yes, it's -- it was in May of '08.
23  Q. Just not certain of the specific date?
24  A. Correct.
25  Q. Okay. And that visit to Amber's home in May

6 (Pages 18 to 21)

ATKINSON-BAKER, INC. COURT REPORTERS        1 (800) 288-3376