# Richard S. Goka, M.D.

P.O. Box 14089
Pinedale, California 93650-4089
(559) 269-2003    Fax (559) 439-3212

August 22, 2008

Gregg Ushiroda, Esq.
Watanabe, Ing & Komejii
999 Bishop Street, 23rd Floor
Honolulu, HI 96813

      Ref:    H█████, Michelle & Natalie v. ST of Hawaii, ET. AL.
                 Natalie DOB: Aug. 3,████
                 Michelle DOB: Feb. 15,████

## Preliminary Report

Dear Mr. Ushiroda,

At your request I have reviewed the three Banker's Boxes of records you have provided on H████ matter. I have also reviewed my reports dated July 10, 2001 and December 10, 2003. In this matter I am asked to review the specifics of the Life Care Plan of Loretta M. Lukens, M.N., R.N., C.R.R.N. Her last plan is dated June 2, 2008.

In my report of 2001 and 2003 I noted the following:

    Ms. Lukens provided for medical and therapy services on a regular basis for the rest of their lives. Ms. Lukens' also include the purchase of a home and attendant care.

    All the service in the life care plan, with the exception of purchasing a home, should be covered by the State of Hawaii, either through the Department of Health, Developmental Disabilities Division; Health, Medicaid; and Rehabilitation."

I have directly attached these reports to the bottom of this report.

Michelle is currently 17 years old with a diagnoses of Autism and mental retardation, and Natalie is 16 years old with the same diagnoses. The severity of each has been well documented. Currently both girls are living at home and involved in Special Education, etc. The severity of their disabilities would most likely preclude them from competitive employment and they would remain eligible for services under the Division of Developmental Disabilities for the State of Hawaii. Eventual residential placement in a foster care home would be covered by the appropriate agency.

As per Federal Rule 26, I will testify to the above and critic the most recent life care plan prepared by Ms. Lukens. My opinions have been gained by review of the medical records, deposition, etc., that have been provided and review. Discussion with other qualified individuals, including Debra Farmer, Administrator for Special Education, Mary Brogan, Assistant Administrator to Child Adolescent Mental Health Division (CAMHD) and David Fray, Chief of Developmental Disabilities Division. The only exhibits would be to refer to Ms. Lukens, if presented. My qualifications are listed in my curriculum vitae as attached, my current fee schedule is attached and all testimony over the past five years is attached.

If you have any questions or need for further information please fee free to contact me.

Respectfully submitted,

Richard S. Goka, M.D.
Diplomat, American Board of Physical Medicine & Rehabilitation.
Diplomat, American Board of Pain Management.

rsg/

H███ 2008
Preliminary Report
Page 2 of 4


Attachments, Previous reports:

December 10, 2003

George S. S. Hom, Esq.
Deputy Atty. General, State Of Hawaii
235 S. Beretania St. #304
Honolulu HI 96813-0000

        Ref:    Natalie & Michelle H███
                Civil No:  CV00-00282 DAE/LEK

**Preliminary Report**

Dear Mr. Hom,

I have reviewed the revised life care plan by Loretta Lukens, M.N, R.N., C.R.R.N. with a last date of July 16, 2003. Furthermore, I have reviewed and compared it to my notes of July 2001.  I have attached a copy of my July 2001 report to the end of this report.

There newer reports do not significantly change my previous opinion.  The largest problem I have is that Ms. Lukens' continues the need and/or frequency of services the rest of the H███'s life, e.g., psychiatrist, behavioral program.  Furthermore, she continued to include a house for them.

I have not had the time to go over the specifics of each plan.  However, the Department of Education, Department of Mental Health and the Department of Rehabilitation for the rest of their lives would cover most of the therapy items and treatment.

Sincerely,

[computer generated, no signature.]

Richard S. Goka, M.D.
Diplomat, American Board of Physical Medicine & Rehabilitation.
Diplomat, American Board of Pain Management.

rsg/



Attachment, report July 2001.

July 10, 2001


George S. S. Hom, Esq.
Deputy Atty. General,   State Of Hawaii
235 S. Beretania St. #304
Honolulu HI 96813-0000

           Ref:     Natalie & Michelle H█████

**Preliminary Report**


Dear Mr. Hom,

I have reviewed the records you sent to me. These were the reports by plaintiffs' experts Barbara Bateman, Ph.D., J.D., Catherine (Church) Critz, Ph.D., Lew P. Freitas, Ph.D., Loretta M. Lukens, M.N., R.N., C.R.R.N., Bryna Siegel, Ph.D., and defense expert Robert Marvit, M.D.. I have further consulted with my consultants and experts.

It is very apparent that there are differences in opinion as to the early intervention of treatment and the residuals that would have resulted, with or without treatment. Both children have evidence of mental retardation by Doctor Critz's testing. Therefore, has there been injury for lack of early intervention? If one assumes there has been no injury, then a life care plan for future medical needs would only be there current specific needs with or without litigation.

As I looked at Ms. Lukens' reports, they are identical with the exception of the medications. Therefore my comments in the narrative report will be considered to apply to both life care plans, unless specifically stated. Details are in the attached spreadsheet for each respective child.

A.       Professional services: the psychiatrist would generally follow up on a quarterly basis for medication management. It is not known if continued medication management will be needed in adult life.

B.       Behavioral psychologist support is available via the school district. Therefore, the cost would be absorbed by the school district until age 21. However, some outside help until the end of the school age (21 years old) would be useful. Once an adult the need for the frequent interventions decreases and at a maximum of quarterly to assist the caregivers might be indicated.

C.       Medications: It is not known or can any one say with probability that they will need to be continually medicated in there adult life. However, the figure was left in. There is a math error in Ms. Lukens' calculations.

D.       Laboratory values: If they continue on medications, it would be a good idea to get occasional blood work. Ms. Lukens has provided for an annual blood work up. However, her price of $300.00 is very high. Actually prices for said blood work are noted.

E.       Acute Behavioral Program: It is not known if the children's behavior will get out of control that such a program would be needed on an annual basis. However, it is not a bad idea to consider this. Once an adult, the behavior is well established and therefore should be handled by the caregivers.

D.       Social Work case service should be provided the rest of their lives by the Regional Center program with the Department of Mental Health. This is a State funded program without cost.

F.       Dental examinations and treatment. There is nothing in the literature that would state that autistic children would have a greater need for dental work verse normal children.

G.       Therapist aide: this figure is at $24.00 per hour, for 24-hour care in a home setting. It is assumes that they will not live at home after age 21 years old by Ms. Lukens' report. If the children are unable to live at home, then they should be placed in the appropriate board and care facility. Therefore, said aide service would be part of the board and care rate.

H.       Therapy service: These would be provided by the local school district. Once an adult, additional therapy is not indicated.

H█████ 2008
Preliminary Report
Page 4 of 4

I.       Augmentative communication: It is unknown if the H█████ children need an argumentative communication device. Only time will tell or if they have the ability to gain from it. The $2,000.00 unit might be pricey for what they will be able to use. The five-year lifetime for the equipment is reasonable. An annual evaluation while in school would be appropriate. As an adult, evaluation would only need to be performed as part of the replacement of the equipment.

J.       Pre-Vocational counseling: Each child has mental retardation. Pre-vocational services would be handled by the State Department of Rehabilitation if they are capable to participate.

K.       Purchase of a home. This is not indicated as part of a medical life care plan. Only the appropriate home modifications, over and above that found in a normal home should be placed here. There are no anticipated home modifications.

I plan to testify as to the future medical cost the H█████ children would reasonably need the rest of their lives. My opinions are based on the opinions of consultants and defense experts. I will have visual aides at trial. A list of previous testimony and curriculum vitae will be available upon request.

Sincerely,


Richard S. Goka, M.D.
Diplomat, American Board of Physical Medicine & Rehabilitation,
Diplomat, American Board of Pain Medicine.

rsg/

**Richard S. Goka, M.D.**
P.O. Box 14089
Pinedale, California 93650-4089
(559) 269-2003      Fax (559) 439-3212

August 22, 2008

Gregg M. Ushiroda, Esq.
Watanabe, Ing & Komeji
999 Bishop St., 23rd Floor
Honolulu HI 96813

Ref:    H████, Michelle & Natalie v. ST of Hawaii, et. al.
        Natalie DOB: Aug. 3, ███
        Michelle DOB: Feb. 15, ███.

Record Review:

2/03/94     <u>Mid-Pacific Rehab. CTR. Speech Eval. Michelle (KP):</u>  2 yrs/11months with profound delayed speech-language development.

2/08/95     <u>Brian O'Hara, M.D., Natalie Kaiser:</u>  IMP:  2.5 y/o with definite signs of autism.  Non-verbal and receptive language is 12-15 months at best.

2/28/94     <u>Kaiser. MRI Brain. Michelle:</u>  Normal.

2/19/95     <u>Brian O'Hara, M.D., Michelle, Kaiser:</u>  Imp:  4 y/o with moderately retarded and autistic

4/12/99     <u>Desiree Medeiros, M., D., Kapiolani MC. (KP):</u>  DX: Immune thrombocytopenic Purpura (ITP) probably secondary, unknown.  Most likely self-limiting.

1/14/00     <u>Barbara Bateman, Ph.D., J.D., testimony at Chapter 36 Due Process Hearing:</u>

1/31/00     <u>Jeanne Comer, Hearing officer, Decision:</u>

1/28/00     <u>Rie H████, Deposition:</u>  Page 53, end of deposition.

1/05/01     <u>Daniel LeGoff, Ph.D., Letter to Mr. Levin:</u>  Services not received between 1994-1999.  Outlines the literature.  "II. Harm caused by lack of provision of services."

1/25/01     <u>Kaiser Permante. Michelle (Records):</u>  (1992-2000)

1/26/01     <u>Mark H████, Deposition, Vol. I:</u>  page 115, end of vol I.

1/26/01     <u>Kaiser Permante, Natalie (Records):</u>  (1992-2000)

1/29/01     <u>Barbara Bateman, Ph.D., J.D., letter to Mr. Levin:</u>

2/15/01     <u>Catherine Critz, Ph.D., Kaiser, Child Development Program on Michelle:</u>  DX autism, developmental testing intellectual ability about 46-months, or IQ estimate 40.

3/12/01     <u>Catherine Critz, Ph.D., Kaiser, Child Development Program on Natalie:</u>  In language, she has severe deficits, uses nonsense jargon with some real words, echolalia and non-sense vocalization. Most of her language remains prompted. [Formal testing performed.]  Felt she had Autism with mild mental retardation.

H█████, Natalie and Michelle
Record Review
Page 2 of 4

| | |
|---|---|
| 3/29/01 | Bryna Siegel, Ph.D. Letter to Mr. Levin:  Evaluated Nov. 1999 and a discussion post lecture in Oahu. "…the current development and adaptive status of each of the girls is a result of inadequacies in their early intervention." Six factors: 1. Window of Opportunity; 2. Program intensity; 3. Autism Specific Teaching; 4. Parent training; 5. Virtual Disability; and 6. Prognostic Significance of Pre-treatment Characteristics. |
| 3/29/01 | Loretta Lukens, RN, updated live care plans: |
| 5/08/01 | Robert Marvit, M.D. record review:  The existing tools for autism assessment were primarily developed for the diagnosis of autism and are not optimally sensitive to assess changes in symptoms as a result of therapeutic interventions.  "…considerable individual differences among children with an appropriate diagnosis of autism, precludes the value of one-size-fits-all approach as suggested by many of the Plaintiff's experts." |
| 6/06/01 | Straub Clinic (Natalie): Straub Clinic (Natalie) records:  years 1996-1997. |
| 6/06/01 | Straub Clinic (Michelle): Straub Clinic (Natalie)) record:  years 1991-1992; 1996-1997. |
| 6/07/03 | Mark H█████, Deposition, Vol. II:  (Pages 118-171). |
| 6/14/03 | Mark H█████, Deposition, Vol. III:  (Pages 174-220. |
| 6/20/03 | Barbara Bateman, Ph.D., J.D. report: |
| 7/07/03 | Daniel LeGoff, Ph.D. Letter to Mr. Levin:  discusses the videotape and his opinions. |
| 7/10/03 | Catharine Critz, Ph.D., Kaiser Consult, Natalie:  She was last seen in 2001. N. has a constellation of features including severe communication delay, qualitative impairment in social interactions, and some stereotyped and repetitive patterns of behavior.  Adaptive skills at 3-5 year level, academic skills $1^{st} - 2^{nd}$ grade. Will need life long adult assistance.  She functions like an individual with mild mental retardation verse an individual with low-average I.Q. |
| 7/10/03 | Catharine Critz, Ph.D., Kaiser Consult, Michelle:  M. has classic features of Autism.  She has severe communication delay, qualitative impairment in social interaction, and stereotyped and repetitive patterns of behavior.  Intellectual abilities in the mild mentally retarded range with somewhat stronger skill when language is not a factor.  She is going to need life long support. |
| 7/11/03 | Carol Forsloff, Vocational opinion:  discusses pre-vocational training, community integration. |
| 7/18/03 | Jay Lucker, Ed.D. CCC-A/SLP, consultation: |
| 7/16/03 | Loretta Lukens, RN, Life Care Plan, Michelle: |
| 7/16/03 | Loretta Lukens, RN, Life Care Plan, Natalie: |
| 8/11/03 | Bryna Siegel, Ph.D., Report: |
| 8/12/03 | Social & Educational Enhancement for Developmental Disabilities (SEED) Care, Hawaii, Records, (5 Volumes): |
| 9/05/03 | Dept. Health, Child &Adolescent Mental Health (CAMH) Michelle records:  Billings. |
| 9/05/03 | Dept. Health, Child &Adolescent Mental Health (CAMH) Natalie records:  Billings. |
| 10/03/03 | Stanley Levin, Medication Statement: |
| 1/31/06 | DOE, IEP (Natalie):  8th grade. Kawananakoa Middle School. |
| 8/17/07 | DOE, IEP, (Michelle):  9th grade, Roosevelt HS. |

H█████, Natalie and Michelle
Record Review
Page 3 of 4

| | |
|---|---|
| 5/15/08 | <u>Care Hawaii, Inc., Records (10 vol):</u> |
| 5/29/08 | <u>Beverly James, Psychosocial Supplement Eval:</u>  Notes that the parents are suffering from PTSD and major depression. |
| 5/29/08 | <u>Barbara Bateman, Ph.D., J.D.:</u>  Observed both at Roosevelt HS on May 19th and 21st, 2008.  Noted that Natalie had more Autistic behavior than Michelle (her observation). |
| 6/02/08 | <u>Loretta Lukens, RN, Life Care Plan:</u>  Natalie, currently16 years old, compares to the 2001, 2003 and 2004 evaluations.  Saw her at Roosevelt HS, able to follow two-step directions with constant cuing.  Her performance was similar to that seen four years prior.  On May 28, observed her at home.  She assist mom with brushing teeth and dressing.  She has no safety awareness and at high risk for sexual abuse.  She requires anesthesia for dental work and is not taking any medications.  Able to toilet her self and need help with wiping. |

Michelle, currently 17 years old, compares to the 2001, 2003 and 2004 evaluations.  Saw her at Roosevelt HS; her attention to activities has increase since four years ago.  She required constant cuing.  She is on Risperdal 1.5 mg a day.  Her behavior is much calmer than four years ago and not as agitated.  On May 28, observed at home.  She assists with her ADL's.  Recent audiology testing was OK.  Parents not dental visit cost $2,300.00 with anesthesia.

| | |
|---|---|
| 6/04/08 | <u>Dept. of Health, Developmental disabilities, CM and Informational, (DHDDCM) Natalie Records:</u> |
| 6/04/08 | <u>Dept. of Health, Developmental disabilities, CM and Informational, (DHDDCM) Michelle Records:</u> |
| 6/05/08 | <u>Bateman, Ph.D., J.D., Barbara, Deposition:</u>  Page 69, Natalie's behavior would be described as moderate (mild to severe).  Michelle closer to the mild end, but she has a lot of peaks and valleys with communication, socialization and cognition.  Natalie also has peaks and valleys.  Page 72, - Natalie – has limited communication skills, reads at the 2nd grade level, has no socialization skills (2 years old).  Page 76 does not know Natalie's present level of function.  Page 77, Natalie's attention span was 2-3 minutes without redirection and other times matter of seconds. Page 78, Natalie, present level of performance is from below 2 years old to six or seven years old.  Page 90, Michelle, socialization – 2.5- 3 years; writing – 2 years old; communication 3 - 4 years old.  Page 98, both girls function at a mentally retarded level and will not be able to function above a mentally retarded level.  Page 100, don't see either being able to live without supervision or assistance at some level. Page 115, notes that if the girls had the appropriate treatment that they would be functioning at a higher level but cannot say how much higher since the treatment did not occur. Page 215, end of depo. |
| 6/06/08 | <u>Daniel LeGoff, Ph.D., Michelle:</u>  She is 17:4 y/o in the 11th grade.  She lives at home and takes Risperdal to help initiate sleep.  According to the ADOS and ADI-R, she has severe autism.  The Vineland II, showed her in the moderate impaired range and was consistent with the test in 2004, adjusted for age.  There is some regression in her receptive and expressive language.  Receptive language was 2:11 and expressive 1:11 years.  DX:  Autism and mental retardation – severe. |
| 6/06/08 | <u>Daniel LeGoff, Ph.D., Natalie:</u>  She is 15:10 y/o in self-contained special ed. @ Roosevelt HS.  According to the ADOS and ADI-R she has the Diagnosis of Autism.  The Vineland II was in the mild to moderately impaired range.  DX:  Autism and severe mental retardation. |
| 6/08/08 | <u>Lukens, Loretta, Deposition:</u>  Page 76, Natalie, there has been no improvement in communication and socialization since 2000.  She needs constant supervision.  Page 80, Michelle, presently looks over-medicated.  Page 100, N., Dr. Bolman said he would need to see her six times a year for medications, and she was on Paxil.  "And I left the Paxil in, even though I know she's not on medication presently, because with the behavior that I observed in this 2008 visit, I think that she may be prescribed medications."  Page 101, in 2003 she (Ms. Lukens) was informed that N. was not taking any medications. Page 213, PT and OT are to maintain function and to maintain as throughout their lifespan the ability to work with their hand and to have some stimulation of their |

H█████, Natalie and Michelle
Record Review
Page 4 of 4

upper body, gross motor and a home program. Forgot augmentative communication. Page 217 adds $1000.00 per year to each LCP. Page 221 end of deposition.

7/03/08   <u>Kaiser P. Medical Care Program Records:</u>

7/08/08   <u>Daniel LeGoff, Ph.D., Deposition:</u> Page 10 notes he had not reviewed any other expert reports in within the year. Page 21, Michelle is in the severely impaired range of functioning and Natalie in the bottom of the Moderate range of function. Page 22, Michelle, moderate - mild range of mental retardation. Page 25, Natalie is mild range of mental retardation with a scatter from low- average to moderately impaired. Page 165, if they received the proper best practice he noted that they would be functioning at one standard deviation higher, Michelle mild to moderately impaired and Natalie at borderline to moderately impaired (function). Page 172, Michelle, Lieter-R, full I.Q. 53, fluid reasoning 60 and visual spacial 76 (2004) and the Vineland much lower. It tells that Michelle's adaptive functioning or communication, social and self-care skills are much lower than core cognitive abilities. Page 175 Michelle's intellectual ability is in the borderline to mildly impaired range and her functioning adaptively is at the severely impaired range. Page 191, Natalie, (Lieter-R) full IQ 80, fluid reasoning 86, spacial visualization 86, average to below average range. Vineland 30-40 for adaptive functioning, adaptive behavior composite 38. Page 269 end of depo.

Sincerely,

Richard S. Goka, M.D.
Diplomat, American Board of Physical Medicine & Rehabilitation.
Diplomat, American Board of Pain Management.

rsg/

5740 North Palm, Ste 103
Fresno, California 93704-1800
(559) 261-3090    Fax (559) 261-3085

George S. S. Hom, Esq.
Deputy Atty General, State Of Hawaii
235 S. Beretania St. #304
Honolulu HI 96813-0000

     Ref:  Natalie & Michelle ███████
          Civil No:  CV00-00282 DAE/LEK

**Preliminary Report**

Dear Mr. Hom,

I have reviewed the revised life care plan by Loretta Lukens, M.N, R.N., C.R.R.N. with a last date of July 16, 2003.  Furthermore, I have reviewed and compared it to my notes of July 2001.  I have attached a copy of my July 2001 report to the end of this report.

There newer reports do not significantly change my previous opinion.  The largest problem I have is that Ms. Lukens continues the need and/or frequency of services the rest of the H█████ life, e.g., psychiatrist, behavioral program.  Furthermore, she continued to include a house for them.

I have not had the time to go over the specifics of each plan.  However, the Department of Education, Department of Mental Health and the Department of Rehabilitation for the rest of their lives would cover most of the therapy items and treatment.

Sincerely,

[computer generated, no signature.]

Richard S. Goka, M.D.
Diplomat, American Board of Physical Medicine & Rehabilitation.
Diplomat, American Board of Pain Management.

rsg/

Attachment, report July 2001.

**Richard S. Goka, M.D.**
5740 N. Palm, Suite 103
Fresno, California 93704-1800
(559) 261-3090        Fax (559) 261-3085

July 31, 2001

George  S. S. Hom, Esq.
Deputy Atty General,·  State Of Hawaii
235 S. Beretania St. #304
Honolulu HI 96813-0000

         Ref:   Natalie & Michelle█████

### Supplemental Report

Dear Mr. Hom,

You have asked me to supplement my report in reference to Mr. Levin's objections.

Per his request, my qualifications are spelled out in the attached curriculum vitae. My fees for testifying are on the attached fee schedule.

I plan to testify as to the future medical cost the H████children would reasonably need the rest of their lives.  I intend to give testimony on the life care plan prepared by Loretta M. Lukens as noted in my previous report.  The input for my opinions I presented were from Robert Marvit, M.D, and I consulted with Sherri Gibson, Ph.D., a psychologist that is familiar with autism and mental retardation.

The exhibit I will use will be as per my original report, the spread sheet on the future medical cost for each child.

Material used to prepare my report are consultations above and the information provided by Mr. Levin as noted in my original report.

Sincerely,

Richard S. Goka, M.D.
Diplomat, American Board of Physical Medicine & Rehabilitation,
Diplomat, American Board of Pain Medicine.

rsg/

**Richard S. Goka, M.D.**
5740 N. Palm, Suite 103
Fresno, California 93704-1800
(559) 261-3090      Fax (559) 261-3085

July 10, 2001

George S. S. Hom, Esq.
Deputy Atty General,    State Of Hawaii
235 S. Beretania St. #304
Honolulu HI 96813-0000

     Ref:  Natalie & Michelle H█████

**Preliminary Report**

Dear Mr. Hom,

I have reviewed the records you sent to me.  These were the reports by plaintiffs' experts Barbara Bateman, Ph.D., J.D., Catherine (Church) Critz, Ph.D., Lew P. Freitas, Ph.D., Lorretta M. Lukens, M.N., R.N., C.R.R.N., Bryna Seigel, Ph.D., and defense expert Robert Marvit, M.D..  I have further consulted with my consultants and experts.

It is very apparent that there are differences in opinion as to the early intervention of treatment and the residuals that would have resulted, with or without treatment.  Both children have evidence of mental retardation by Doctor Critz's testing.  Therefore, has there been injury for lack of early intervention?  If one assumes there has been no injury, then a life care plan for future medical needs would only be there current specific needs with or without litigation.

As I looked at Ms. Lukens' reports, they are identical with the exception of the medications.  Therefore my comments in the narrative report will be considered to apply to both life care plans, unless specifically stated.  Details are in the attached spread sheet for each respective child.

A.    Professional services: the psychiatrist would generally follow up on a quarterly basis for medication management.  It is not known if continued medication management will be needed in adult life.

H█████, Natalie & Michelle
Preliminary Report, July 10, 2001
Page 2

---

B.  Behavioral psychologist support is available via the school district. Therefore, the cost would be absorbed by the school district until age 21. However, some outside help until the end of the school age (21 years old) would be useful. Once an adult the need for the frequent interventions decreases and at a maximum of quarterly to assist the care-givers might be indicated.

C.  Medications: It is not known or can any one say with probability that they will need to be continually medicated in there adult life. However, the figure was left in. There is a math error in Ms. Lukens' calculations.

D.  Laboratory values: If they continue on medications, it would be a good idea to get occasional blood work. Ms. Lukens has provided for an annual blood work up. However, her prices of $300.00 is very high. Actually prices for said blood work are noted.

E.  Acute Behavioral Program: It is not known if the children's behavior will get out of control that such a program would be needed on an annual basis. However, it is not a bad idea to consider this. Once an adult, the behavior is well established and therefore should be handled by the caregivers.

D.  Social Work case service should be provided the rest of their lives by the Regional Center program with the Department of Mental Health. This is a State funded program without cost.

F.  Dental examinations and treatment. There is nothing in the literature that would state that autistic children would have a greater need for dental work verse normal children.

G.  Therapist aide: this figure is at $24.00 per hour, for 24 hour care in a home setting. It is assumes that they will not live at home after age 21 years old by Ms. Lukens' report. If the children are unable to live at home, then they should be placed in the appropriate board and care facility. Therefore, said aide service would be part of the board and care rate.

H.  Therapy service: These would be provided by the local school district. Once an adult, additional therapy is not indicated.

I.  Augmentative communication: It is unknown if the Horsley children need an argumentative communication device. Only time will tell or if they have the ability to gain from it. The $2,000.00 unit might be pricey for what they will be able to use. The five year life time for the equipment is reasonable. An annual evaluation while in school would be appropriate. As an adult, evaluation would only need to be performed as part of the replacement of the equipment.

H█████, Natalie & Michelle
Preliminary Report, July 10, 2001
Page 3

---

J.      Pre-Vocational counseling: Each child has mental retardation.  Pre-vocational
        services would be handled by the State Department of Rehabilitation if they
        are capable to participate.

K.      Purchase of a home.  This is not indicated as part of a medical life care plan.
        Only the appropriate home modifications, over and above that found in a
        normal home should be placed here.  There are no anticipated home
        modifications.

I plan to testify as to the future medical cost the H█████ children would reasonably
need the rest of their lives.  My opinions are based on the opinions of consultants and
defense experts.  I will have visual aides at trial.  A list of previous testimony and
curriculum vitae will be available upon request.

Sincerely,

Richard S. Goka, M.D.
Diplomat, American Board of Physical Medicine & Rehabilitation,
Diplomat, American Board of Pain Medicine.

rsg/

Michelle
Life Care Plan Comparison, Preliminary Report
Page 1

Life Care Plan Loretta M. Lukens, 3/29/01

| | Frequency | Cost | Age 9-13 | Age 14-21 | Age 22- Life | One Time |
|---|---|---|---|---|---|---|
| **A.1 Professional Health Care** | | | | | | |
| Psychiatrist | 6 times a year | 160.00 | 960.00 | 960.00 | 960.00 | |
| Beh. Psychologist | 3 times a week | 125.00 | 19,500.00 | 19,500.00 | 19,500.00 | |
| **Medications** | | | | | | |
| Resperidal | 3 mg per day | 105.99 per 30 d | 3,816.00 | 3,816.00 | 3,816.00 | |
| Diagnostic Test | Annually | 300.00 | 300.00 | 300.00 | 300.00 | |
| Acute res. behav program | 14 day per year | 450.00 | 6,300.00 | 6,300.00 | 6,300.00 | |
| Social Work Case Coord | 1 hour per week | 40.00 | 2,080.00 | 2,080.00 | 2,080.00 | |
| Dental Examination/TX | | | 1,300.00 | 1,300.00 | 1,300.00 | |
| Subtotal | | | $34,256.00 | $34,256.00 | $34,256.00 | |
| **A.2 Personal Care** | | | | | | |
| Therapist aid for supervised living | 24.00/hr or 48 | — | — | — | | 175,200.00 |
| Less behavioral program | | | | | | -6,300.00 |
| | | | | | | 168,900.00 |
| 50% shared by sister | | | | | | 50.00% |
| Net (subtotal) | | | | | | $84,450.00 |

H██████, Michelle
Life Care Plan Comparison, Preliminary Report
Page 2

| Realistic Costs | Cost | Age 9-13 | Age 14-21 | Age 22- Life | One Time |
|---|---|---|---|---|---|
| Frequency | Cost | | | | |
| Quarterly | 160.00 | 640.00 | 640.00 | 640.00 | |
| Once a month | 125.00 | 1,500.00 | 1,500.00 | 500.00 | |
| [general behavioral psychological service to be provided by the school district. In adult life one would expect a maximum of quarterly visits] | | | | | |
| Actual annual cost is | | 3,868.64 | 3,868.64 | 3,868.64 | |
| Actual cost of annual lab | | 67.96 | 67.96 | 67.96 | |
| | | 6,300.00 | 6,300.00 | 0.00 | |
| This service is not likely once adult [service provided for life by the regional center] | | | | | |
| No indication that this is related to autism | | | | | |
| Subtotal | | $12,376.59 | $12,376.59 | $5,076.59 | |
| Board & Care | 150.00 per day | | | 54,750.00 | |
| [this is assuming 24 hour awake care should be in a borad and care facility] | | | | | |
| | | | | | |
| Subtotal | | | | $54,750.00 | |

H___, Michelle
Life Care Plan Comparison, Preliminary Report
Page 3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.A Communication/Other Therapy | | | | | | | |
| Speech Therapy | 3 times a week | 100.00 | 15,600.00 | 15,600.00 | 15,600.00 | | |
| Augmentative Communication E | Annually | 200.00 | 200.00 | 200.00 | 200.00 | | |
| Augmentative Communication | Every 5 yrs | 2,000.00 | 400.00 | 400.00 | 400.00 | | |
| Occupational Therapy | 3 hours a week | 100.00 | 15,600.00 | 15,600.00 | None | | |
| Subtotal | | | $31,800.00 | $31,800.00 | $16,200.00 | | |
| Total Section A | | | $66,056.00 | $66,056.00 | $134,906.00 | $0.00 | |
| B. Non-Annualized cost | | | | | | | |
| B.1.  Pre vocational Counselling | | | | | | 5,000.00 | |
| B. 2 Purchase Home | | | | | | 500,000.00 | |
| Subtotal | | | | | | 505,000.00 | |
| GRAND TOTAL | | | $66,056.00 | $66,056.00 | $134,906.00 | $505,000.00 | $505,000.00 |
| | Layout | Page 1 | Page 3 | | | | |
| | | Page 2 | Page 4 | | | | |

H____, Michelle
Life Care Plan Comparison, Preliminary Report
Page 4

| | | | | |
|---|---|---|---|---|
| [To be provided by school district, none in adult life] | | | | |
| In adult life every 5 yrs | 200.00 | 200.00 | 40.00 | |
| Equipment | 400.00 | 400.00 | 400.00 | |
| [to be provided by the school district] | | | | |
| Subtotal | $600.00 | $600.00 | $440.00 | |
| | $12,976.59 | $12,976.59 | $60,266.59 | |
| [to be provided by the department of rehabilitation] | | | | |
| [see board and care facilities] | | | | |
| GRAND TOTAL | $12,976.59 | $12,976.59 | $60,266.59 | $0.00 |

H____, Natalie
Life Care Plan Comparison, Preliminary Report
Page 1

**H____, Michelle**
Life Care Plan Loretta M. Lukens, 3/29/01

| | Frequency | Cost | Age 9-13 | Age 14-21 | Age 22- Life | One Time |
|---|---|---|---|---|---|---|
| **A.1 Professional Health Care** | | | | | | |
| Psychiatrist | 6 times a year | 160.00 | 960.00 | 960.00 | 960.00 | |
| Beh. Psychologist | 3 times a week | 125.00 | 19,500.00 | 19,500.00 | 19,500.00 | |
| Medications | | | | | | |
| Paxil | 40 mg per day | 125.99 per 250 | 3,654.00 | 3,654.00 | 3,654.00 | |
| Diagnostic Test | Annually | 300.00 | 300.00 | 300.00 | 300.00 | |
| Acute res. behav program | 14 day per year | 450.00 | 6,300.00 | 6,300.00 | 6,300.00 | |
| Social Work Case Coord | 1 hour per week | 40.00 | 2,080.00 | 2,080.00 | 2,080.00 | |
| Dental Examination/TX | | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | |
| Subtotal | | | $34,094.00 | $34,094.00 | $34,094.00 | |
| **A.2 Personal Care** | | | | | | |
| Therapist aid for supervised living | 24.00/hr or 48 | — | — | — | 175,200.00 | |
| Less behavioral program | | | | | -6,300.00 | |
| | | | | | 168,900.00 | |
| 50% shared by sister | | | | | 50.00% | |
| Net (subtotal) | | | | | 50.00% | $84,450.00 |

H███, Natalle
Life Care Plan Comparison, Preliminary Report
Page 2

| Realistic Costs | | Age 9-13 | Age 14-21 | Age 22- Life | One Time |
|---|---|---|---|---|---|
| Frequency | Cost | | | | |
| Quarterly | 160.00 | 640.00 | 640.00 | 640.00 | |
| Once a month | 125.00 | 1,500.00 | 1,500.00 | 500.00 | |
| [general behavioral psychological service to be provided by the school district. In adult life one would expect a maximum of quarterly visits] | | | | | |
| Actual annual cost is | | 3,678.91 | 3,678.91 | 3,678.91 | |
| Actual cost of annual lab | | 67.96 | 67.96 | 67.96 | |
| | | 6,300.00 | 6,300.00 | 0.00 | |
| [service provided for life by the regional center] | | | | | |
| This service is not likely once adult | | | | | |
| No indication that this is related to autism | | | | | |
| Subtotal | | $12,186.87 | $12,186.87 | $4,866.87 | |
| [this is assuming 24 hour awake care should be in a borad and care facility] | | | | | |
| Board & Care | 150.00 per day | | | $54,750.00 | |
| | | | | | |
| | | | | | |
| Subtotal | | $0.00 | $0.00 | $54,750.00 | |

H▮, Natalie
Life Care Plan Comparison, Preliminary Report
Page 3

| 3.A Communication/Other Therapy | | | | | | |
|---|---|---|---|---|---|---|
| Speech Therapy | 3 times a week | 100.00 | 15,600.00 | 15,600.00 | | |
| Augmentative Communication Ev | Annually | 200.00 | 200.00 | 200.00 | | |
| Augmentative Communication | Every 5 yrs | 2,000.00 | 400.00 | 400.00 | 400.00 | |
| Occupational Therapy | 3 hours a week | 100.00 | 15,600.00 | 15,600.00 | None | |
| Subtotal | | | $31,800.00 | $31,800.00 | $16,200.00 | |
| Total Section A | | | $65,894.00 | $65,894.00 | $134,744.00 | $0.00 |
| B. Non-Annualized cost | [note her total of $66,056.00 is an adding error] | | | | | |
| B.1. Pre vocational Counseling | | | | | | 5,000.00 |
| B. 2 Purchase Home | | | | | | 500,000.00 |
| Subtotal | | | | | | 505,000.00 |
| GRAND TOTAL | | | $65,894.00 | $65,894.00 | $134,744.00 | $505,000.00 |
| | Layout | Page 1 | Page 2 | Page 3 | Page 4 | |

H____, Natalie
Life Care Plan Comparison, Preliminary Report
Page 4

| | | | | | |
|---|---|---|---|---|---|
| [To be provided by school district, none in adult life] | | | | | |
| In adult life every 5 yrs | 200.00 | 200.00 | 40.00 | | |
| Equipment | 400.00 | 400.00 | 400.00 | | |
| [to be provided by the school district] | | | | | |
| Subtotal | $600.00 | $600.00 | $440.00 | | |
| | $12,786.87 | $12,786.87 | $60,076.87 | | |
| [to be provided by the department of rehabilitation] | | | | | |
| [see board and care facilities] | | | | | |
| GRAND TOTAL | $12,786.87 | $12,786.87 | $60,076.87 | $0.00 | |