Defendant's Rule 26(a)(2) Expert Report of Charles L. Weatherly, Sr. – Mark H.

1. **Statement Of Opinions To Be Expressed And The Basis And Reasons Therefor:**

   a. At all times relevant hereto, the HDOE complied with the requirements of Section 504 (29 U.S.C. § 794 or "Section 504") in its design and implementation of educational programming for Michelle and Natalie H. On remand from the Ninth Circuit, Plaintiffs have essentially restated their IDEA claims as the basis for Section 504 damages, without recognizing that the purposes and requirements of those two statutory schemes are separate and distinct.

   b. Section 504 is an anti-discrimination statute that prohibits public entities receiving federal funds from discriminating against otherwise qualified persons with disabilities by denying them access to or preventing them from enjoying the benefits of federally funded programs or benefits. Unlike the Individuals with Disabilities Education Act (20 U.S.C. § 1401 et seq. or IDEA), Section 504 requires only that public entities make "reasonable accommodations" to federally funded programs so that they can be enjoyed by disabled individuals. It does not require the creation of entirely new programs or benefits that are not available for non-disabled individuals or programs that are substantially or fundamentally altered in design.

   c. As applied to the Plaintiffs' claims in this case, the "benefit" to which they sought access was public education in the State of Hawaii. That benefit,

as it is defined by Hawaii law, regulation, and policy, includes the curriculum standards, academic instruction, access to extracurricular activities, and diploma track options available to K-12 students in the State of Hawaii. The existing curricular options available to students in Hawaii, *i.e.*, the educational "benefit" provided by the State, includes modified courses and alternative diploma tracks for students with varying levels of academic ability.

d. To the extent that students with disabilities require reasonable accommodations to access the benefit of public education (*i.e.*, the same public education to which non-disabled students have access), Hawaii's law, regulations, policy and practice requires the provision of such accommodations.

e. When the nature of a student's disability is so severe that the student cannot benefit from the educational program designed for nondisabled students, even with reasonable accommodations and without substantial or fundamental alteration to the existing educational program, that student is referred, evaluated, identified, and provided with "special education" pursuant to the IDEA and corresponding Hawaii law.

f. Under the IDEA, the "special education" is defined as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability...." Thus, by definition, the educational programming designed and provided for a student who is eligible for "special education" under the IDEA goes well beyond the types of reasonable accommodations

    required under Section 504 and the design for educational programming for non-disabled students. Essentially, the educational programming requirements of the IDEA subsume most, if not all, reasonable accommodations to which a disabled student would be entitled under Section 504 in order to access the benefit of public education designed to meet the needs of non-disabled students.[1]

g. To the extent that Plaintiffs argue that Michelle and Natalie H. were denied rights under Section 504 because they were not provided with individualized programming designed and created specifically to meet their individual needs,[2] their Section 504 arguments must fail. Section 504 does not require the creation of specially designed, individualized programming for students with disabilities. Rather, it requires the provision of reasonable accommodations made to existing programming to allow students with disabilities to access the same public education to which non-disabled students have access.

h. The educational programs designed and implemented for Michelle and Natalie H. from 1994 through 1999 were designed to meet their educational needs at least as adequately as the needs of non-disabled persons are met in the State of Hawaii. In fact, the HDOE's development

---

[1] Of course, Section 504 would continue to apply to prevent discrimination and to ensure that the disabled student was allowed access to other, non-programmatic aspects of public education, such as participation in field trips, attendance at assemblies, participation in nonacademic and extracurricular activities, etc. In this case, Plaintiffs have not alleged that HDOE violated Michelle's or Natalie's rights under Section 504 by denying them access to such activities or aspects of the public education benefit.

[2] *See, e.g.*, the Plaintiffs' Amended Complaint and the expert reports prepared by Barbara Bateman, which do nothing but recast the Plaintiffs IDEA FAPE claims as per se violations of Section 504. Indeed, Ms. Bateman's 2008 reports simply rehash her 2003 reports, which were prepared based upon the Plaintiffs' IDEA claims.

of specially designed instruction for Michelle and Natalie H. to meet their unique needs, though beyond the requirements of Section 504, did, at a minimum, satisfy Section 504's requirement that HDOE provide "reasonable accommodations" to allow Michelle and Natalie to access the same benefit provided to Hawaii's non-disabled students—i.e., the benefit of public education.

2. **Data Or Other Information Considered By The Witness**

   a. Pleadings, orders, deposition transcripts, and expert reports in the *Mark H.*, *Amber N.* and *Stephen L.* cases
   b. Education records
   c. Interviews with OCR staff
   d. Interviews with HDOE staff
   e. Interviews with other expert witnesses
   f. OCR memoranda and letters of finding (both published and unpublished)
   g. Section 504 and IDEA case law

3. **Exhibits To Be Used**

   None at this time. Defendant reserves the right to supplement these responses in the event exhibits are developed.

4. **Qualifications Of The Witness**

   See attached *curriculum vita*

5. **Compensation To Be Paid**

   $400 per hour.

6. **Listing of Any Other Cases In Which The Witness Has Testified As Expert**

None.

                                              Charles L. Weatherly, Esq.
Weatherly Law Firm, LLP
3414 Peachtree Rd NE
Monarch Plaza, Ste 1550
Atlanta, Georgia 30326