IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARK H. and RIE H.            )    CIVIL 00-00282 LEK-RLP
Individually and as Guardians )
Ad Litem of MICHELLE H. and   )
NATALIE H., minors,           )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
PATRICIA HAMAMOTO, in her     )
official capacity of          )
Superintendent of the Hawaii  )
Department o Education, State  )
of Hawaii ,                   )
                              )
          Defendants.         )
_____ )


**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

          Before the Court is Plaintiffs Mark H. and Rie H.'s,

individually and as guardians ad litem of Michelle H. and Natalie

H. (collectively "Plaintiffs"), Motion for Partial Summary

Judgment ("Motion"), filed November 3, 2011.  Defendants the

State of Hawai`i Department of Education, and Patricia Hamamoto,

in her official capacity as Superintendent of the DOE

(collectively "Defendants" or "the DOE"), filed their memorandum

in opposition on November 29, 2011 and Plaintiffs filed their

reply on December 6, 2011.  This matter came on for hearing on

December 20, 2011.  Appearing on behalf of Plaintiffs were

Michael Livingston, Esq., and Stanley Levin, Esq., and appearing

on behalf of Defendants was Kenneth Robbins, Esq.  After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, Plaintiffs' Motion is HEREBY DENIED

for the reasons set forth below.

## BACKGROUND

The case has been in active litigation for eleven years

and on appeal to the Ninth Circuit three times.  Most recently,

the Ninth Circuit reversed the district court's grant of summary

judgment to the DOE, and provided guidance on the adjudication of

the liability claims under § 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794.  The Ninth Circuit set forth the following

procedural history:

>    As noted above, in 1999, the H. Family filed
> an administrative action against Hawaii DOE
> claiming violations of IDEA and the Rehabilitation
> Act § 504.  In that action, an administrative
> hearing officer found that Hawaii DOE had denied
> Michelle and Natalie a Free Appropriate Public
> Education ("FAPE") under IDEA and that the girls'
> IEPs were inadequate.  The hearing officer ordered
> Hawaii DOE to remedy the violations.
>
>    In 2000, the H. Family sued Hawaii DOE in
> federal district court, seeking damages for
> alleged violations of Rehabilitation Act § 504.
> The H. Family's theory was that because both IDEA
> and the regulations implementing Rehabilitation
> Act § 504 guarantee children with disabilities the
> right to a FAPE, they could prevail in their claim
> for damages under the Rehabilitation Act by
> establishing that Hawaii DOE violated Michelle and
> Natalie's right to a FAPE under IDEA.
>
>    In the 2000 case, the district court held
> that there was no private right of action to
> enforce the FAPE required by the regulations

implementing the Rehabilitation Act § 504.  The district court further held that the H. Family failed to establish a violation of § 504 because "the plaintiffs do not present any evidence that they were intentionally discriminated against solely by reason of their disability."

The H. Family appealed.  In that appeal we held that although there is a private right of action under Rehabilitation Act § 504, simply establishing a violation of the right to a FAPE under IDEA is not sufficient to prevail in a § 504 claim for damages.  [Mark H. v. Haw. Dep't of Educ., 513 F.3d 922, 924-25 (9th Cir. 2008).] Plaintiffs may prevail in a § 504 claim for damages, we held, by establishing that an organization that receives federal funds violated § 504 "intentionally or with deliberate indifference." Id. at 938.  Plaintiffs may establish that an organization violated § 504 by showing that the public entity discriminated against, excluded, or denied the benefits of a public program to a qualified person with a disability. Id. at 937.  This includes showing that the public entity denied the plaintiff a reasonable accommodation. Id.  A violation of one of the regulations implementing § 504 may support a claim for damages if the violation denied the plaintiff meaningful access to a public benefit, and the defendant organization acted with deliberate indifference. Id. at 938-39.  Having so clarified the legal standards, we remanded with the direction that the H. Family be given the opportunity to amend their complaint. Id. at 939.

In 2008, the H. Family filed an amended complaint (the complaint at issue in this appeal). In their amended complaint, the H. Family alleged that Hawaii DOE violated Rehabilitation Act § 504 by: (1) failing to provide the girls with the reasonable accommodation of their disabilities in the form of autism-specific special education services, and (2) failing to design the girls' IEPs to meet the girls' needs as adequately as the needs of non-disabled students were met, as required by 34 C.F.R. § 104.33(b)(1)(i). Additionally, the H. Family alleged, Hawaii DOE acted with deliberate indifference.

3

<u>Mark H. v. Hamamoto</u> ("<u>Mark H. #2</u>"), 620 F.3d 1090, 1095 (9th Cir. 2010) (footnotes omitted).   The Ninth Circuit concluded that the district court erred when it granted the DOE's motion for summary judgment on Plaintiffs' claims that the DOE violated Rehabilitation Act § 504 by: (1) failing to provide the girls with the reasonable accommodation of autism-specific special education services; and (2) failing to design the girls' IEPs to meet the girls' needs as adequately as the needs of non-disabled students are met as required by 34 C.F.R. § 104.33(b)(1)(i).   The Ninth Circuit remanded the case for further proceedings and ordered the case reassigned to a different judge.   <u>Id.</u> at 1102.

        On May 23, 2011, Plaintiffs filed a Motion to Preclude Relitigation of Factual Issues Adjudicated in the Administrative Hearing, asking that the DOE be collaterally estopped from relitigating the factual findings made by the Administrative Hearing Officer ("Hearings Officer") in her January 2000 Decision and Order ("Decision").   In a July 14, 2011 Order, Magistrate Judge Richard Puglisi ruled that the following eight facts are established by the Decision under the doctrine of collateral estoppel ("factual findings"):

        1.   From 1994 to 1998, the Hawaii DOE did not provide autism-specific services to the girls, although such services were available.

        2.   The Hawaii DOE did not include autism-specific services in the girls' IEPs before 1999.

        3.   Prior to the Administrative hearing,

Michelle and Natalie had not received "such services as are necessary to permit the child[ren] to benefit" from their education.

    4.   It was four years (1998) before the parents were given information about available mental health services.

    5.   Services that were required were not made available nor included in the IEP.

    6.   The unique needs of the girls were not included in the IEPs.

    7.   Functional analyses were not done for Michelle and Natalie prior to the Administrative Hearing.

    8.   During the relevant years of 1994-1998, the Hawaii DOE failed to provide Natalie or Michelle a reasonable accommodation that they needed to enjoy meaningful access to the benefits of a public education.

[Order Granting Plaintiffs' Motion to Preclude Relitigation of Factual Issues Adjudicated in Administrative Hearing, (filed July 14, 2011), at 2-3 [dkt. no. 520] (citations omitted).]

## I.   **Plaintiffs' Motion**

Plaintiffs assert that liability, including deliberate indifference, has been established as a matter of law, leaving only the issues of causation and damages for trial.  [Mem. in Supp. of Motion at 4-5.]

Plaintiffs acknowledge that the Hearings Officer did not expressly decide the issue of "deliberate indifference," however, they argue that the eight factual findings listed above effectively resolve in Plaintiffs' favor all issues of liability,

including deliberate indifference under the standard articulated by the Ninth Circuit in Mark H. #2.  Plaintiffs state that the instant Motion is addressed to the legal standard "related to Hawaii DOE's failure to provide a reasonable accommodation Michelle and Natalie needed to enjoy meaningful access to the benefits of public education."  [Id. at 6-7 n.2.]

Plaintiffs set forth three possible standards of deliberate indifference under which the Court should find the DOE liable: (1) the Ninth Circuit's recent decision in Mark H. #2, based on the DOE's failure to adequately investigate whether the autism-specific services Michelle and Natalie needed were available as a reasonable accommodation; (2) vicarious liability under the doctrine of respondeat superior, based on the deliberate indifference of DOE employees; and (3) liability under City of Canton v. Harris, 489 U.S. 378 (1998), based on the DOE's continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.  [Id. at 11.]

First, as to the Mark H. #2 standard, Plaintiffs argue that the first three factual findings satisfy the first prong of the deliberate indifference standard, that "Michelle and Natalie needed autism-specific services in order to enjoy meaningful access to the benefits of public education."  Factual findings #1, #2, and #3, read together, state that autism-specific

6

services were necessary during the relevant time period.   All of the factual findings also establish that autism-specific services were available as a reasonable accommodation.   [Id. at 9-10.]

Further, Plaintiffs assert that the DOE knew that Michelle and Natalie needed autism-specific services and failed to adequately investigate whether those services were available as a reasonable accommodation.   With respect to the DOE's knowledge, Plaintiffs argue that the DOE was on notice at all relevant times that an accommodation was required, and that Michelle and Natalie required autism-specific services.   The Ninth Circuit opinion states that, in 1994 and 1995 respectively, the DOE knew that Michelle and Natalie had been diagnosed with autism.   [Id. at 15 (citing 620 F.3d at 1093).]   Despite this knowledge, the DOE did not investigate what accommodations were necessary.   For example, functional analyses were not done, and the unique needs of the girls were not noted in the IEPs.   [Id. at 17-19.]   Plaintiffs rely on the reports and testimony of several DOE employees, including: (1) Dr. Margaret Koven, a Department of Health ("DOH") psychologist who diagnosed Michelle and recommended "autism-specific services"; [id. at 16 (citing Plaintiffs' Concise Statement of Facts ("Pltfs.' CSF"), Declaration of Counsel, Exh. B (5/3/94 Letter to Linda Kimoto), at 1);] (2) Pauline Kokubun, a DOE employee responsible for coordinating services for students, who provided other autistic

students with autism-specific services; [id. at 19-20 (citing Mark H. #2, 620 F.at 1095, and Decl. of Counsel, Exh. E (7/3/01 Depo. Trans.), at 18-20);] (3) Dr. Daniel Legroff, whose report and testimony indicated that DOH autism specialists were providing autism-specific interventions to other students; [id. at 19-20 (citing Mark H. #2, at 1095, and Decl. of Counsel, Exh. D (1/5/01 Expert Report), at 6);] and (4) Dr. Robert Campbell, the DOE's Fed. R. Civ. P. 30(b)(6) designee and former Director of Special Education, who testified that the "full array" of special education and related services were available for children with autism, and that knowledge of the availability of related services was available to DOE personnel; [id. at 21-22 (citing Decl. of Counsel, Exh. F (4/24/01 Depo. Trans.), at 80-82)].

Second, as to *respondeat superior* liability, Plaintiffs argue that, under § 504, the DOE is vicariously liable for the deliberate indifference of its employees.  They state that this theory is a "less stringent standard" for establishing deliberate indifference.  [Id. at 22-23 (citing Canton, 489 U.S. at 392).] According to Plaintiffs, DOE employees, knew (1) beginning in 1994, that Michelle and Natalie required accommodation; and (2) beginning in 1994, that Michelle required autism-specific services, and, beginning in 1995, that Natalie required autism-specific services.  DOE employees knew that autism-specific

8

services were available as a reasonable accommodation, but, despite this knowledge, they failed to provide Michelle or Natalie with the reasonable accommodation they needed to enjoy meaningful access to the benefits of a public education.  [Id. at 23.]

Third, Plaintiffs argue that the DOE is liable under the City of Canton standard because DOE policymakers were aware of, and acquiesced in, a long-standing pattern of violations of the federal rights of autistic children to meaningful access to public education.  A public entity's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference'– necessary to trigger municipal liability."  [Id. at 25 (quoting Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 407-08 (1997)).]  Plaintiffs assert that there is proof that DOE officials disregarded the "known or obvious consequence" that an omission in their training program would cause their employees to violate the federally protected rights of special education students.  [Id. at 25-26.] Plaintiffs cite to the Ninth Circuit's decision in Mark H. v. Lemahieu, 513 F.3d 922, 925-26 (9th Cir. 2008) ("Mark H. #1"), to illustrate that the DOE knew by 1991 that it was violating § 504, and had been out of compliance for over a decade.  Plaintiffs

9

then discuss the <u>Felix</u> class action lawsuit and Consent Decree, finding a system-wide violation of statutory requirements.[1]

_____

[1] <u>Mark H. #1</u> provides the following background regarding the <u>Felix</u> case:

> In January of 1993, a report by the Auditor for the State of Hawaii entitled <u>A Study on the Memorandum of Agreement for Coordinating Mental Health Services to Children</u>, No. 93-1, acknowledged that efforts to coordinate among state agencies the provision of mental health services for special education students had largely failed.  The report concluded that "the [Hawaii DOE] must provide or purchase mental health services for special education students when the [Hawaii DOH] cannot provide these services."
>
> Later in 1993 a class of plaintiffs comprised of disabled children and adolescents eligible for special education and mental health services sued the Hawaii DOE and the Hawaii DOH in federal court, claiming a failure to comply with the IDEA and with § 504 of the Rehabilitation Act.  <u>Felix v. Waihee</u>, CV. No. 93-00367-DAE.  The district court granted summary judgment for the class on the issue of liability, finding that the agencies "ha[d] systematically failed to provide required and necessary educational and mental health services to qualified handicapped children," in violation of both federal laws. Thereafter, in 1994, the parties entered into a consent decree (the "<u>Felix</u> Decree"), which was approved by the district court.
>
> In the <u>Felix</u> Decree, the two state agencies acknowledged that they had violated the federal IDEA and § 504 of the Rehabilitation Act. The agencies agreed that the Hawaii DOE would provide all educational services the <u>Felix</u> class members require; that the Hawaii DOH would provide all mental health services the class members require to benefit from the educational services; and that the two agencies would create and maintain a
>
> (continued...)

[Id. at 27-28.]  Plaintiffs argue that, during the period from 1994 to 1998, there is no question that the DOE had both actual and constructive knowledge that its special education system was violating the federal rights of its students, and that harm to Michelle and Natalie was likely, yet it failed to act on that likelihood.  [Id. at 28-29.]

Last, Plaintiffs argue that "good faith" and lack of funds are not available defenses once deliberate indifference has been established.  With respect to funding, Mark H. #1 rejected the DOE's excuse that it lacked funds to provide required special education services, and the excuse was also rejected by United States District Judge David Alan Ezra when he granted summary judgment on liability to the Felix class members.

In sum, Plaintiffs argue that they have established deliberate indifference as a matter of law because the DOE knew that Michelle and Natalie required reasonable accommodation, and

---

¹(...continued)
system of care adequate to provide a continuum of services, placements, and programs necessary for disabled students.  The Felix Decree defined the plaintiff class as "all children and adolescents with disabilities residing in Hawaii, from birth to 20 years of age, who are eligible for and in need of education and mental health services but for whom programs, services, and placements are either unavailable, inadequate, or inappropriate because of lack of a continuum of services, programs, and placements."  Autistic children fall within the Felix class.

Mark H. #1, 513 F.3d at 926.

that reasonable accommodation was available, but failed to provide a reasonable accommodation.

## II.  Defendants' Memorandum in Opposition

The DOE disputes that Plaintiffs are entitled to summary judgment and argues that there are genuine issues of fact with respect to what the DOE "knew."  It maintains that the Mark H. #2 decision shows that "deliberate indifference" and liability in general are still at issue.  The DOE posits that, had the Ninth Circuit determined that the argument and evidence presented there were sufficient for summary judgment, it would have included that direction in its remand.  [Mem. in Opp. at 1-2.]

The DOE first argues that neither Mark H. #2, nor the factual findings in the Magistrate Judge's July 14 Order are sufficient to take the nuanced and fact-intensive question of deliberate indifference away from the jury.  It contends that there are genuine issues of material fact with respect to whether relevant DOE employees had knowledge of the array of services available; and Plaintiffs have presented no evidence showing that any failure by DOE employees to adequately investigate whether services were available as a reasonable accommodation resulted from deliberate indifference, rather than mere negligence. [Id. at 4.]

Second, the DOE argues that application of the respondeat superior standard does not change the fact that there

is a genuine issues of material fact with respect to the alleged
deliberate indifference of the individual DOE employees.  It asks
the Court to find that "[l]acking any intentional discrimination
or deliberate indifference on the part of the employees of
Defendant Hawaii DOE the Court thus finds that Defendant Hawaii
DOE cannot be found to have intentionally discriminated against
or acted with deliberate indifference toward Plaintiff." [Id. at
28 (quoting Doe ex rel. Doe v. State of Hawai'i Dep't of Educ.,
351 F. Supp. 2d 998, 1015 (D. Hawai'i 2004)).]

        Third, the DOE states that the City of Canton standard
has no applicability in the context of a § 504 deliberate
indifference claim, and could not avail Plaintiffs here even if
it did apply.  City of Canton is a § 1983 case, and the
deliberate indifference standard applied in City of Canton-type
cases is substantively different from the standard as applied in
other contexts.  Even if it did apply, the DOE cannot be found
liable under City of Canton unless the Plaintiffs can establish
that an officially executed policy, or the toleration of a custom
within the DOE leads to, causes, or results in the deprivation of
a constitutionally protected right.  It argues that the evidence
must show that the need to act is so obvious that the DOE's
"conscious" decision not to act can be said to amount to a
"policy" of deliberate indifference to Michelle and Natalie's
constitutional rights.  [Id. at 30-32.]

          With respect to Plaintiffs' invocation of the Felix

case, the DOE argues that mere existence of Felix does not prove

that the DOE discriminated solely on the basis of disability

against each and every special education student in Hawai`i.  The

DOE maintains that Felix is irrelevant to the required proof of

deliberate indifference under § 504.  [Id. at 34.]

          Finally, the DOE argues that "good faith" on the part

of the DOE and its individual employees is a relevant factor in

determining whether the employees were motivated by deliberate

indifference.  That is, evidence that DOE employees acted in

"good faith" is relevant to whether the finder of fact can

attribute deliberate indifference.  The DOE cites Senior United

States District Judge Alan C. Kay's decision in Wiles v.

Department of Education, 593 F. Supp. 2d 1176 (D. Hawai`i 2008),

in which the judge took evidence of individual DOE employees'

"good faith" into account in denying the plaintiffs' motion for

new trial following a defense verdict after a lengthy trial.

Further, the DOE states that in granting the defendant's motion

in limine to exclude expert opinions as to alleged deliberate

indifference in Wiles, Judge Kay found that "Defendant's good

faith attempts to provide special education services to Bryan are

relevant to the deliberate indifference standard for liability

under § 504 of the Rehabilitation Act." [Id. at 37 (quoting

Wiles, CIV 04-00442 ACK-BMK, 2008 WL 4225846, *1 (D. Hawai`i

                                    14

Sept. 11, 2008)).]

The DOE cites the testimony of individual employees to show their good faith efforts to provide services of which they were aware.  It also cites the deposition testimony of Mark. H., the girls' father, stating that during the entire period from 1994 to 1999, DOE-employed Educational Assistants were doing their best to help his daughters.  [Id. at 38 (citing Defendants' Concise Statement of Facts ("Defs.' CSF"), Declaration of Counsel, Exh. 9 (10/21/08 Deposition of Mark H.), at 100:8-19).] The DOE argues that the evidence here establishes "good faith" efforts were made by DOE employees to provide services to Michelle and Natalie which those employees knew to be available and appropriate.  Plaintiffs have presented no evidence to establish that relevant DOE employees acted out of "bad faith."

The DOE asks the Court to deny the Motion and allow the case to proceed to trial.  [Id.]

### III. **Plaintiffs' Reply**

Plaintiffs characterize the DOE's opposition as attempting to take refuge in the "'good faith' ignorance of 'relevant DOE employees.'"  [Reply at 2.]

According to Plaintiffs, Mark H. #2 principally relied on two prior Ninth Circuit decisions as legal authority for the standard for deliberate indifference it prescribed: Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001); and Lovell v.

15

Chandler, 303 F.3d 1039 (9th Cir. 2002).  Significantly, both of
these decisions are explicitly grounded on the Supreme Court's
decision in City of Canton.  They argue that these three cases
establish that a public entity may be found to have been
deliberately indifferent as an entity, based on knowledge legally
attributable to it.  [Id. at 5.]  Plaintiffs assert that both
Lovell and Duvall relied primarily on City of Canton as authority
in specifying the legal standard for deliberate indifference to
be applied in damages cases under § 504; because City of Canton
involved a § 1983 claim, respondeat superior liability did not
apply.  Plaintiffs argue that the DOE is urging that the
"subjective" legal standard for deliberate indifference governing
claims against prison officials under the Eighth Amendment should
apply here, rather than the "objective" standard specified by
City of Canton.  [Id. at 10.]

     According to Plaintiffs, during the relevant time
period, the need for more or different training was so obvious,
and the inadequacy so likely to result in the violation of
federal rights, that the policymakers of the DOE were, as a
matter of law, deliberately indifferent to the need.  They quote
from Lovell, "the purpose of requiring proof of intent as a
prerequisite for the recovery of monetary damages from a public
entity is to ensure that the entity had knowledge and notice[,
and] not to measure the degree of institutional ill will toward a

protected group, or to weigh competing institutional motives."
[Id. at 8 (alteration Plaintiffs').]

Second, Plaintiffs argue that the knowledge and notice
required to establish deliberate indifference may be imputed to
relevant DOE employees.  They state that the "doctrine of
imputation applies to individuals as well as entities." [Id. at
12 (citing 58 Am. Jur. 2d Notice § 8 ("Constructive notice is
information or knowledge of a fact imputed by law to a person
(although that person might not actually know the fact), because
he or she could have discovered the fact by proper diligence, and
the person's situation was such as to cast upon him or her the
duty of inquiring into it.")).]  Plaintiffs assert that "relevant
DOE employees" had an admitted duty of inquiry, and where the
undisputed facts establish that these "relevant DOE employees"
failed adequately to investigate, constructive knowledge or
notice may be established as a matter of law, and the "relevant
DOE employees" cannot hide behind a cloak of ignorance.  [Id.]

Plaintiffs point to Duvall to explain that a public
entity that is on notice that an accommodation is required must
"'undertake a fact-specific investigation to determine what
constitutes a reasonable accommodation.'"  [Id. at 13 (quoting
Duvall, 260 F.3d at 1139).]  Duvall noted that the Rehabilitation
Act created "a duty to gather sufficient information from the
[disabled individual] and qualified experts as needed to

17

determine what accommodations are necessary." [Id. (quoting Duvall, 260 F.3d at 1139) (alteration Plantiffs').] Plaintiffs argue that, when Pauline Kokubun, a DOE employee responsible for coordinating Michelle and Natalie's special education services, was asked, "[w]asn't it your role under Felix that these children got autism specific services," she responded that "it was a collaborative effort," but "it was understood that when a teacher got the IEP, that she would follow up with these services." [Id. (citing Pltfs.' CSF, Exh. E).] They argue that there is no legitimate dispute that the "relevant DOE employees" involved in the "collaborative effort" to ensure that Michelle and Natalie received needed autism-specific services failed to discharge their duty adequately to investigate.   [Id.]

Third, Plaintiffs argue that there is no genuine issue of fact precluding summary judgment.  They maintain that Dr. Koven's letter was explicitly referenced in Michelle's first IEP, and DOE employee Vera Arita admitted at deposition that she did not follow up on Dr. Koven's recommendations.  Further, Dr. Koven's report regarding Michelle was specifically noted at a case conference for Michelle held on May 5, 1994.  [Id. at 14 (citing Pltfs.' CSF, Decl. of Counsel, Exh. J (5/5/95 Case Conference Summary), at 5-6).]  They also cite Natalie's July 7, 1995 IEP, which states that "Natalie was referred to the Wahiawa Infant Development Program in 6/94 by Dr. Margaret Koven,

18

psychologist, after she conducted an evaluation of Natalie's older sister for pervasive developmental disorder, and had noted similar concerns with Natalie. . . .  Dr. Koven also noted that Natalie was making extremely slow progress in communication and social development skills." [Id. at 15 (quoting Pltfs.' CSF, Decl. of Counsel, Exh. K (7/7/95 IEP), at 783).]  They also argue that the testimony of Dr. LeGroff, Ms. Kokubun, and the 30(b)(6) testimony of Dr. Campbell show that relevant DOE employees had the requisite knowledge.  [Id. at 15-16.]

In conclusion, Plaintiffs state that, although the DOE states in its opposition that "'[t]he relevant DOE employees did not have knowledge of the array of services that were available[,]'" the DOE's admission establishes rather than excuses its deliberate indifference.  [Id. at 18 (quoting Mem. in Opp. at 20).]

### STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

> Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex [Corp. v. Catrett], 477 U.S. [317,] 323 [(1986)].  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210

F.3d 1099, 1102 (9th Cir. 2000).  The burden
initially falls on the moving party to identify
for the court "those portions of the materials on
file that it believes demonstrate the absence of
any genuine issue of material fact." T.W. Elec.
Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987) (citing Celotex
Corp., 477 U.S. at 323). "A fact is material if it
could affect the outcome of the suit under the
governing substantive law." Miller [v. Glenn
Miller Prods., Inc.], 454 F.3d [975,] 987 [(9th
Cir. 2006)].

When the moving party fails to carry its
initial burden of production, "the nonmoving party
has no obligation to produce anything."  In such a
case, the nonmoving party may defeat the motion
for summary judgment without producing anything.
Nissan Fire, 210 F.3d at 1102-03.  On the other
hand, when the moving party meets its initial
burden on a summary judgment motion, the "burden
then shifts to the nonmoving party to establish,
beyond the pleadings, that there is a genuine
issue for trial." Miller, 454 F.3d at 987.  This
means that the nonmoving party "must do more than
simply show that there is some metaphysical doubt
as to the material facts." Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986) (footnote omitted).  The nonmoving
party may not rely on the mere allegations in the
pleadings and instead "must set forth specific
facts showing that there is a genuine issue for
trial." Porter v. Cal. Dep't of Corr., 419 F.3d
885, 891 (9th Cir. 2005) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).
"A genuine dispute arises if the evidence is such
that a reasonable jury could return a verdict for
the nonmoving party." California v. Campbell, 319
F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred
Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000)
("There must be enough doubt for a 'reasonable
trier of fact' to find for plaintiffs in order to
defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving
party's evidence is to be believed, and all
justifiable inferences are to be drawn in that
party's favor." Miller, 454 F.3d at 988
(quotations and brackets omitted).

Rodriguez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations omitted).

## DISCUSSION

In light of the July 14, 2011 factual findings, the parties dispute whether there are genuine issues of material fact with respect to the DOE's and its employees' knowledge and conduct for purposes of the Rehabilitation Act § 504 claim for deliberate indifference.

## I.   Mark H. #2 Framework of Analysis

The Court begins its analysis as directed by the roadmap set forth in the Mark H. #2 opinion remanding the matter. The Ninth Circuit set forth the following discussion of § 504:

> Rehabilitation Act § 504 forbids organizations that receive federal funding, including public schools, from discriminating against people with disabilities.  29 U.S.C. § 794(b)(2)(B); Mark H., 513 F.3d at 929; Bird v. Lewis & Clark Coll., 303 F.3d 1015, 1020 (9th Cir. 2002).  Section 504 provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a); see also 34 C.F.R. § 104.4.  If an organization that receives federal funds violates Rehabilitation Act § 504 intentionally or with deliberate indifference, it may be liable for compensatory damages.  See Mark H., 513 F.3d at 930, 938.

### A. Meaningful Access/Reasonable Accommodation

An organization that receives federal funds

21

violates § 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services.  See Alexander v. Choate, 469 U.S. 287, 301-02 & n.21, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985); Mark H., 513 F.3d at 937; Bird, 303 F.3d at 1020, 1022. Michelle and Natalie's ages and disabilities render them qualified individuals as defined by 34 C.F.R. § 104.3(j), (l)(2), (m).  Section 504 applies to Hawaii DOE because it is a public school system.  See 29 U.S.C. § 794(b)(2)(B); 20 U.S.C. § 7801(26)(A).  Thus, Hawaii DOE is liable for damages for violating § 504 if it failed to provide Natalie or Michelle a reasonable accommodation that they needed to enjoy meaningful access to the benefits of a public education, and did so with deliberate indifference.  See Mark H., 513 F.3d at 937-38; see also 29 U.S.C. § 794(a); 34 C.F.R. § 104.4.

## 1. Reasonable Accommodation

Hawaii DOE violated the Rehabilitation Act § 504 by denying Michelle and Natalie reasonable accommodation if: (1) the girls needed autism-specific services to enjoy meaningful access to the benefits of a public education, (2) Hawaii was on notice that the girls needed those autism-specific services, but did not provide those services, and (3) autism-specific services were available as a reasonable accommodation. See, e.g., Duvall v. County of Kitsap, 260 F.3d 1124, 1136-38 (9th Cir. 2001) (holding that there were genuine issues of fact regarding reasonable accommodation where there was some evidence that a hearing impaired plaintiff needed videotext display to follow court proceedings and that defendants denied plaintiff's request for videotext display without adequately investigating whether videotext display was available as a reasonable accommodation).

Reasonable accommodation does not require an organization to make fundamental or substantial alterations to its programs.  See Choate, 469 U.S. at 300-01, 105 S. Ct. 712; Mark H., 513 F.3d at 937.  Reasonableness "depends on the individual

circumstances of each case, and requires a
fact-specific, individualized analysis of the
disabled individual's circumstances and the
accommodations that might allow him to [enjoy
meaningful access to the program.]" <u>Vinson v.
Thomas</u>, 288 F.3d 1145, 1154 (9th Cir. 2002)
(internal citation and quotation marks omitted).
An accommodation is reasonable if it is
"reasonable on its face, *i.e.*, ordinarily or in
the run of cases." <u>U.S. Airways, Inc. v. Barnett</u>,
535 U.S. 391, 402, 122 S. Ct. 1516, 152 L. Ed. 2d
589 (2002).

"[M]ere speculation that a suggested
accommodation is not feasible falls short of the
reasonable accommodation requirement; [the
Rehabilitation Act] create[s] a duty to gather
sufficient information from the disabled
individual and qualified experts as needed to
determine what accommodations are necessary."
<u>Duvall</u>, 260 F.3d at 1136 (internal quotation marks
omitted).

Here, the H. Family alleged that because of
their disabilities, neither Michelle nor Natalie
could enjoy meaningful access to the benefits of a
public education without autism-specific services.
The H. Family also alleged that, from 1994 to
1999, Hawaii DOE was on notice that the girls
needed the services, but failed to provide them.
The H. Family further alleged that those
autism-specific services were available as a
reasonable accommodation.   There is evidence
supporting each of these allegations.

First, evidence supports the allegation that
because of their autism, Michelle and Natalie
could not access the benefits of a public
education without receiving autism-specific
services.   For example, an administrative hearing
officer found that from 1994 to 1998, Michelle and
Natalie did not receive "such [special education]
services as are necessary to permit [them] to
benefit" from their education.   Additionally,
Dr. LeGoff reported that to benefit from their
education, the girls needed autism-specific
services such as Discrete Trial Training and the
full-time assistance of a specially trained

therapeutic aide.

Second, evidence supports the allegation that from 1994 to 1999, Hawaii DOE was on notice that the girls needed the autism-specific services, but failed to provide those services.  For example, in 1994 a Hawaii Department of Health psychologist reported to Hawaii DOE that Michelle was autistic and needed to be provided with numerous autism-specific services.  By 1995, Hawaii DOE knew that Natalie had also been diagnosed as autistic.  These facts could give rise to an inference that Hawaii DOE also knew that Natalie needed autism-specific services.

Additionally, expert and percipient witnesses testified that Hawaii DOE did not provide Michelle and Natalie with those autism-specific services. The administrative hearing officer likewise found that Hawaii DOE did not provide any autism-specific services to the girls from 1994 to 1999.

Finally, evidence supports the allegation that such autism-specific services were available as a reasonable accommodation.  For example, Dr. LeGoff testified that Hawaii DOE provided such services to other students with autism. Additionally, Hawaii DOE employee Pauline Kokubun testified that other autistic children in the school system were receiving autism-specific services at the same time that Michelle and Natalie were not receiving such services.

In sum, the H. Family made specific allegations that: (1) the girls' disability made it impossible for them to enjoy meaningful access to the benefits of a public education without autism-specific services; (2) Hawaii DOE was on notice that the girls needed those services, but failed to provide them; and (3) those services were available as a reasonable accommodation. Evidence supports each of these allegations. Accordingly, the H. Family raised genuine issues of material fact as to whether Hawaii DOE denied the girls meaningful access to the benefits of a public education by denying them reasonable accommodation.

## 2. Deliberate Indifference

Hawaii DOE acted with deliberate indifference
if it (1) "[had] knowledge that a harm to a
federally protected right is substantially
likely," and (2) "fail [ed] to act upon that
likelihood." Lovell v. Chandler, 303 F.3d 1039,
1056 (9th Cir. 2002).  Hawaii DOE had knowledge
that a harm to a federally protected right was
substantially likely if Hawaii DOE knew that
Michelle and Natalie needed accommodation of
autism-specific services.  See id.  Hawaii DOE
failed to act upon that likelihood if it failed to
adequately investigate whether those
autism-specific services were a reasonable
accommodation.  See id.; Duvall, 260 F.3d at
1139-40.  Thus, Hawaii DOE acted with deliberate
indifference if it knew that Michelle and Natalie
needed autism-specific services in order to enjoy
meaningful access to the benefits of a public
education and failed to investigate whether those
services were available as a reasonable
accommodation.

The H. Family has presented evidence that
raises genuine issues of material fact as to
whether Hawaii DOE knew that Michelle and Natalie
needed autism-specific services to access the
benefits of a public education, and as to whether
Hawaii DOE failed to adequately investigate
whether those services were available as a
reasonable accommodation.

First, as discussed above, the H. Family has
supported their allegation that from 1994 to 1999,
Hawaii DOE knew that Michelle and Natalie needed
autism-specific services in order to access the
benefits of a public education.

Second, the evidence presented supports the
allegation that although Hawaii DOE was aware that
Michelle and Natalie needed these accommodations,
Hawaii DOE failed to adequately investigate
whether such accommodations were available.  For
example, there is evidence that Hawaii DOE was
providing such autism-specific services to other
autistic children during this same time period.
If a jury concludes that Hawaii DOE was providing

25

autism-specific services to other students, and
that Hawaii DOE was on notice that Michelle and
Natalie needed such services, those conclusions
could easily support the inference that Hawaii DOE
did not adequately investigate whether it could
provide autism-specific services to Michelle and
Natalie.

Accordingly, the H. Family raised a genuine
issue of material fact as to whether Hawaii DOE
acted with deliberate indifference.

Mark H. #2, 620 F.3d at 1097-99 (footnotes and some citations

omitted) (alterations in original).

## II.  **Reasonable Accommodation**

According to Plaintiffs, the first prong of Mark H. #2

has been satisfied because the language of factual finding #8 is

nearly identical:

8.   During the relevant years of 1994-1998, the
Hawaii DOE failed to provide Natalie or Michelle a
reasonable accommodation that they needed to enjoy
meaningful access to the benefits of a public
education.

At the hearing on the Motion, the DOE acknowledged that

Michelle and Natalie did not receive the appropriate educational

services, but that other students did, and the DOE did not

meaningfully contest this issue for purposes of the instant

Motion.

## III. **Deliberate Indifference**

The Court next turns to the heart of this dispute, and

observes that the issue of deliberate indifference is a very

close question on the current record.

26

As a preliminary matter, the Court will follow the guidance set forth most recently by the Ninth Circuit in Mark H. #2. To the extent Plaintiffs argue that they have established deliberate indifference under a theory of *respondeat superior* or City of Canton, the Court finds that those alternative theories do not provide an adequate basis for the entry of summary judgment in favor of Plaintiff. Rather, for purposes of the instant Motion, the Court is guided by the Mark H. #2 framework. The Court does, however, agree with Plaintiffs that the "subjective" legal standard for deliberate indifference governing claims against prison officials under the Eighth Amendment should not apply here; instead, the Court relies on the more "objective" standard reflected in cases following City of Canton.

> Under Mark H. #2, the DOE
>
> acted with deliberate indifference if it (1) "[had] knowledge that a harm to a federally protected right is substantially likely," and (2) "fail[ed] to act upon that likelihood." Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002). Hawaii DOE had knowledge that a harm to a federally protected right was substantially likely if Hawaii DOE knew that Michelle and Natalie needed accommodation of autism-specific services. See id. Hawaii DOE failed to act upon that likelihood if it failed to adequately investigate whether those autism-specific services were a reasonable accommodation. See id.; Duvall, 260 F.3d at 1139-40. Thus, Hawaii DOE acted with deliberate indifference if it knew that Michelle and Natalie needed autism-specific services in order to enjoy meaningful access to the benefits of a public education and failed to investigate whether those services were available as a reasonable accommodation.

27

Mark H. #2, 620 F.3d at 1099.

As to the first issue, whether the DOE had knowledge that a harm to a federally protected right was a substantial likelihood, the parties dispute what the individual DOE employees "knew." The Court agrees with the DOE that the "knowledge" of the DOE is not imputed to the individual DOE employees who actually provided Michelle and Natalie with services. Plaintiffs' allegations against the DOE itself are premised upon the acts and omissions of individual DOE employees, however, Plaintiffs' argument relies upon the knowledge of the "Hawai`i DOE" as a collective, rather than on the specific knowledge of individual DOE employees. The DOE states that Plaintiffs' argument that the "Hawai`i DOE" as an entity "knew" that certain services were available as a reasonable accommodation ignores the basic fact that whatever the "Hawai`i DOE" – as employer may have known, no evidence has been submitted to establish that relevant DOE employees had this same knowledge. [Mem. in Opp. at 5-6.] The DOE notes that the knowledge of an individual employee may be imputed to the employer, a public employer's knowledge is not imputed to its employees. [Id. at 6 (citing Doe ex rel. Doe v. State of Hawai`i DOE, 351 F. Supp. 2d 998, 1013 n.31 (D. Hawai`i 2004)).]

Although it is a close question, the Court concludes that Plaintiffs have not established that relevant DOE employees

had knowledge of the full array of services available.  None of the testimony and opinions of the four individuals presented in the Motion (Dr. Margaret Koven, Dr. LeGoff, Ms. Kokubun, and Dr. Campbell) establishes what relevant DOE employees working with the girls knew, rather than what might have been "known" by the DOE as their employer.  [Id.]  The Court further notes that the factual findings in the Magistrate Judge's July 14 Order do not impute to any relevant individual DOE employee knowledge of what services were available.  With respect to the factual findings, the Court agrees with the DOE that those findings acknowledge: that undefined "autism-specific services" were available which were not provided to Michelle and Natalie (factual finding Nos. 1 & 2); that their parents were not given complete information about available mental health services (factual finding No. 4); that certain services and unique needs of Michelle and Natalie were not made available or included in their IEPs (factual finding Nos. 5, 6, & 7); and that they were not provided a reasonable accommodation under the IDEA (factual finding Nos. 3 & 8).  While the eight factual findings strongly support the conclusion that appropriate services were available, but not provided to Michelle and Natalie, they do not establish what any given DOE employee knew or whether any DOE employee's alleged failure to investigate the availability of services was the result of mere negligence, or motivated by deliberate

29

indifference. [Id. at 8-9.]

With respect to the DOE's failure to act on any knowledge that harm to a federally protected right was likely, i.e., its duty to investigate, there is evidence that other children did receive autism-specific services during the time in question. The issue unresolved is the scope of the DOE's duty to investigate and whether it breached that duty. The Ninth Circuit elaborated on the duty to investigate in Duvall as follows:

> [The DOE] is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation, and we have provided the criteria by which to evaluate whether that investigation is adequate. Mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary. . . . Accordingly, a public entity does not "act" by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable. Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.

Duvall, 260 F.3d 1139-40 (citations, quotation marks, footnotes, and some brackets omitted); see also Frederick v. Cal. Dep't of

30

Corr. & Rehab., No. C 08-2222 MMC (PR), 2010 WL 3768521, at *7
(N.D. Cal. Sept. 22, 2010) ("To raise a triable issue of material
fact as to this element, a plaintiff must present evidence
sufficient to show that the entity failed to undertake a
fact-specific investigation, gathering from the plaintiff and
qualified experts sufficient information to determine what
constitutes a reasonable accommodation.  In conducting any such
investigation, the entity is required to give 'primary
consideration' to the plaintiff's requests." (citations
omitted)).

Under the second element, "a public entity does not
'act' by proffering just any accommodation: it must consider the
particular individual's need when conducting its investigation
into what accommodations are reasonable." Lovell, 303 F.3d at
1056.  In opposition to the Motion, the DOE has set forth
evidence that relevant employees considered Michelle and
Natalie's individual needs, but there remains a question of fact
regarding whether these employees sufficiently investigated what
accommodations were reasonable.

Here, there is evidence that relevant DOE employees, in
discharging their duty to investigate, relied on the incorrect
conclusions of others in the system that autism-specific services
were either not available or not appropriate.  For example,
Judy Saranchock, principal at Ala Wai Elementary School during

31

the relevant time, testified that she was not aware of any mental

health services available for Michelle and Natalie, and that she

relied on the teacher, Joanne Germon, who told her that such

services were not offered:

> A.   At that time when Natalie was at Ala Wai
> School the teacher said mental health services
> were not offered at that time.
>
> Q.   What do you mean they weren't offered?
>
> A.   She said that they were not offered at that
> time, this teacher, Ms. Germon.
>
> ***
>
> Q.   Do you know why they weren't offered?
>
> A.   At that time, the teacher is saying, it
> wasn't offered.

[Defs.' CSF, Decl. of Counsel, Exh. 6 (11/8/00 Saranchock Depo.),

at 16:8-17:5; 25:2-11; 32:15-17.]  Ms. Saranchock testified that

she relied upon Ms. Germon's advisement that mental health

services were not available at that time, and also testified that

Ms. Germon was "an excellent teacher that did the best job she

could and gave the best services that she could."  [Id. at

16:8-17:5; 25:20-22.]  While this testimony alone does not

indicate that Ms. Saranchock's reliance was objectively reckless

or deliberately indifferent, or that she breached her duty to

investigate further, under the circumstances, it certainly calls

into question whether checking with a single teacher is

objectively sufficient investigation.  Plaintiffs, however, have

32

not adequately demonstrated sufficient evidence as to the
parameters of the duty to investigate.  Nor is there evidence
that the DOE ever denied any of Plaintiffs' requests without
investigation.  That is, Plaintiffs have not established, for
summary judgment purposes, that the DOE's investigatory efforts
fell short as a matter of law, and that it failed to "undertake a
fact-specific investigation to determine what constitutes a
reasonable accommodation."  Duvall, 260 F.3d at 1139.  Plaintiffs
have likewise failed to show that any failure by DOE employees to
institute those services or to adequately investigate was a
result of conduct that was more than negligent, and involved an
element of deliberateness.[2]

The record is clear, and the DOE acknowledges, that it
utterly failed to provide for Michelle and Natalie's educational
needs, to their and their parents' tragic detriment.  Although
the question is a close one, the Court cannot say, drawing all
justifiable inferences in favor of the non-moving party for
purposes of summary judgment, that Plaintiffs have met their
burden of demonstrating that there is no genuine issue of

---

[2] The parties do not dispute, and the Court agrees, that
§ 504 does not create a cause of action for educational
malpractice.  See Alston v. Dist. of Columbia, 770 F. Supp. 2d
289, 299-300 (D.D.C. 2011) ("sporadic instances of negligence by
different decision-makers and failures to provide [plaintiff] a
FAPE over a nearly four-year period" were not sufficient to
establish the "bad faith or gross misjudgment" necessary under §
504).

material fact that the DOE deliberately failed to act.  That is,
the Court cannot determine, on the current record, whether the
DOE's failure to act was merely negligent, or contained the
required element of deliberateness.  A reasonable jury, weighing
the evidence at trial, could possibly find that the DOE was not
deliberately indifferent.  See Button v. Bd. of Regents of Univ.
& Cmty Coll. Sys. of Nev., No. 06-16231, 289 Fed. Appx. 964 (9th
Cir. Aug. 14, 2008) ("It is not enough that the Board took some
action - in Duvall the court made some effort to accommodate, but
we held that a jury could find this effort both insufficient and
deliberate.  This inquiry is nuanced and fact-intensive -
precisely the province of the jury."); Roe v. Nev., 621 F. Supp.
2d 1039, 1060 (D. Nev. 2007) ("Whether a local government entity
has displayed a policy of deliberate indifference is generally a
question for the jury." (quoting Oviatt By & Through Waugh v.
Pearce, 954 F.2d 1470, 1478 (9th Cir. 1992))).

        Finally, with respect to Plaintiffs' invocation of the
Felix case, the Court agrees with the DOE that the case does not
prove that the DOE discriminated solely on the basis of
disability against each and every special education student in
Hawai`i.  Under Mark H. #2, "simply establishing a violation of
the right to a FAPE under IDEA is not sufficient to prevail in a
§ 504 claim for damages."  Mark H. #2, 620 F.3d at 1096.  Felix
is not determinative of the required proof of deliberate

34

indifference under § 504.  Were this not the case, deliberate indifference could be established in every § 504 case from a certain time period as a matter of law, based solely on the existence of <u>Felix</u>.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Plaintiffs' Motion for Partial Summary Judgment, filed November 3, 2011, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2012.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**MARK H., ET AL. V. PATRICIA HAMAMOTO, ET AL; CIVIL NO. 00-00282 LEK-RLP; ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**